# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-3841

_____

B.M., a Minor, by and through His Next Friends, Roger Miller and Sharon Miller;
Roger Miller, Individually; Sharon Miller, Individually

*Plaintiffs - Appellants*

v.

South Callaway R-II School District

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

_____

Submitted: September 26, 2013
Filed: October 17, 2013

_____

Before RILEY, Chief Judge, BYE and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

B.M. and his parents, Sharon Miller ("Ms. Miller") and Roger Miller
(collectively, "the Millers"), appeal the district court's[1] grant of summary judgment

_____

[1]The Honorable Nanette K. Laughrey, United States District Judge for the
Western District of Missouri.

in favor of the South Callaway R-II School District ("the District") on their claims alleging violations of § 504 of the Rehabilitation Act of 1973 ("§ 504"), 29 U.S.C. §§ 794 and 794a, and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131 *et seq*. For the reasons discussed below, we affirm.

## I. Background

B.M., a fourteen-year-old boy, lives in Callaway County, Missouri, and has attended public schools operated by the District since he was five years old. As a young child, he never exhibited unusual behavioral difficulties. However, during the spring of 2007—while he was in second grade—B.M. began to act out at school. In early April 2007, he was sent to the principal's office several times for disrupting class. His misbehavior escalated later that month when he threw chairs, hit two teachers, and bit and scratched John Elliston, the school's principal. As a result, B.M. received a day-and-a-half suspension. On May 1, within days of returning from his suspension, B.M. threw a chair, overturned desks and a table, and used obscene language. He was suspended again, this time for portions of four days.

Being understandably concerned by B.M.'s progressively worsening behavior, on May 4, 2007, Ms. Miller took him to see Dr. MacElroy, a pediatrician with expertise treating children with behavioral problems. Dr. MacElroy did not diagnose B.M. with any behavioral disorder, but rather referred him to the Thompson Center for further evaluation. Dr. MacElroy also provided Ms. Miller with forms for B.M.'s teachers to record their observations of his classroom conduct. The District's teachers promptly completed the forms. By the end of the 2006-2007 school year, Ms. Miller had not requested that the District evaluate or accommodate her son under either § 504 or the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq*.

When B.M. returned for his third-grade year, his serious behavioral problems resumed. That fall, Ms. Miller met several times with Elliston to discuss alternative strategies for addressing B.M.'s behavior. Elliston encouraged her to take B.M. to counseling, stressing that she should not delay seeking psychological treatment. He gave her written information about outside resources that might be helpful. Ms. Miller also had several extended meetings with Dr. Dustin Storm, the District's superintendent.

In December 2007 or January 2008, Elliston proposed that the District evaluate B.M. for accommodation under the IDEA. He provided Ms. Miller with forms required to authorize an IDEA evaluation and asked that she return them to Angie Tramwell, a school employee, when completed. Ms. Miller refused to complete the authorization forms. Tramwell is a relative of Roger Miller, and Ms. Miller feared that involving Tramwell might cause friction within the family and dissemination of personal information to other family members. Three times Elliston requested that Ms. Miller complete the authorization forms so that the District could commence the IDEA process. And thrice Ms. Miller refused to do so, ultimately returning the forms blank. In response, Elliston told Ms. Miller that she could obtain an evaluation from an outside party.

In February 2008, Ms. Miller took B.M. to the Thompson Center, where he was diagnosed with ADHD. Skeptical of this diagnosis, Ms. Miller took B.M. to see Dr. Jeff Tarrant, who diagnosed him with dysthymic disorder, a form of depression. Neither physician recommended evaluation or accommodation under either § 504 or the IDEA.

Also in February 2008, B.M. began weekly counseling sessions with Kendall Grayson. To facilitate her evaluations, the District permitted Grayson to observe B.M. in class. Grayson recommended that the District provide a "chill-out room" for B.M. when he became agitated. She also recommended that B.M. be placed with a

particular teacher for the following school year. The District implemented both of these recommendations. Despite these efforts, B.M.'s behavioral problems persisted.

On September 18, 2008—early in B.M.'s fourth-grade year—Ms. Miller requested for the first time that the District evaluate B.M. under § 504. The District insisted that it first conduct an IDEA evaluation, which Ms. Miller authorized. When Ms. Miller expressed concern over the District's plan to place B.M. in special education classes for part of the evaluation process, the District adopted her recommendation that B.M. remain in ordinary classes with assistance from a "facilitator." Later, at Ms. Miller's request, the District replaced the facilitator soon thereafter. On either October 30 or 31, Ms. Miller again requested a § 504 evaluation, but the District informed her that it would not conduct a § 504 evaluation until it had completed its IDEA evaluation.

In late November, the District concluded that B.M. did not qualify for accommodation under the IDEA and promptly provided Ms. Miller with a § 504 referral form. The District proposed a § 504 education plan on December 1 and began implementing the plan on December 8. Ms. Miller objected to the details of the plan and, consequently, pulled B.M. out of school. She also filed a complaint with the United States Department of Education's Office of Civil Rights ("OCR"), alleging numerous statutory and regulatory violations. On January 8, 2009, District officials presented a revised § 504 plan in a meeting with Ms. Miller, but she rejected this plan as well. In March 2009, the District proposed yet another § 504 plan. Finally, Ms. Miller permitted B.M. to return to school under that plan. The District revised the plan once more in August 2009.

In May 2010, OCR completed its investigation and concluded that the District had failed to comply with two regulations implementing § 504 and the ADA.[2] However, OCR found that the record did not support Ms. Miller's other twelve complaints, including her allegations that the District failed to evaluate B.M., implement a § 504 plan, or consider adequately her input. The OCR decision did not suggest any wrongful intent by the District.

On January 20, 2011, the Millers filed this action raising claims under § 504 and the ADA. The Millers premised their claims on the District's alleged failures to evaluate and accommodate B.M. and to comply with statutory procedural requirements. The District moved for summary judgment on several grounds. The district court granted the District's motion, holding that the Millers had failed to exhaust their administrative remedies under the IDEA.[3] The Millers filed a motion for reconsideration, arguing that they should be excused from exhausting their administrative remedies because exhausting those remedies would be futile. The district court granted the Millers' motion in part, vacated its prior order, and again granted summary judgment in favor of the District, this time on the ground that there was no genuine dispute whether the District had acted in bad faith or with gross misjudgment. The Millers filed a second motion for reconsideration, arguing for the

---

[2]OCR concluded that the District had used erroneous criteria in determining whether its suspensions of B.M. constituted a significant change in educational placement warranting a manifestation hearing. OCR further concluded that the materials provided by the District explaining statutory procedural safeguards provided inadequate detail regarding the complaint and hearing process. The District entered into voluntary compliance agreements with OCR to remedy both violations.

[3]Although the Millers did not raise claims under the IDEA, a party must exhaust the administrative remedies available under the IDEA before bringing a claim under a different statute seeking relief that is also available under the IDEA. *J.B. ex rel. Bailey v. Avilla R-XIII Sch. Dist.*, 721 F.3d 588, 592 (8th Cir. 2013) (citing 20 U.S.C. § 1415(l)).

first time that they need not show that the District had acted in bad faith or with gross misjudgment. The district court denied the motion, and the judgment became final. The Millers timely appealed the grant of summary judgment.

## II. Discussion

We review a district court's grant of summary judgment *de novo*, affirming if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "The non-moving party receives the benefit of all reasonable inferences supported by the evidence, but has 'the obligation to come forward with specific facts showing that there is a genuine issue for trial.'" *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1207 (8th Cir. 2013) (quoting *Dahl v. Rice Cnty.*, 621 F.3d 740, 743 (8th Cir. 2010)). A complete failure by the non-moving party "to make a showing sufficient to establish the existence of an element essential to that party's case . . . necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Title II of the ADA prohibits public entities, including public schools, from excluding qualified individuals with disabilities from participation in or benefits from that entity's services, programs, or activities. 42 U.S.C. § 12132. Similarly, § 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). "We have held that the enforcement, remedies, and rights are the same under both Title II of the ADA and § 504 of the Rehabilitation Act." *Birmingham v. Omaha Sch. Dist.*, 220 F.3d 850, 856 (8th Cir. 2000). On appeal, the parties do not contest that these statutes apply to the District or that B.M. is a qualified individual.

We have consistently held that "[w]here alleged ADA and § 504 violations are based on educational services for disabled children, the plaintiff must prove that school officials acted in bad faith or with gross misjudgment." *Birmingham*, 220 F.3d at 856; *see also M.Y. ex rel. J.Y. v. Special Sch. Dist. No. 1*, 544 F.3d 885, 888 (8th Cir. 2008). Despite our longstanding adherence to this requirement, the Millers offer several arguments for why we should not obligate them to show that the District acted in bad faith or with gross misjudgment. The Millers did not contest application of the bad faith or gross misjudgment requirement in their opposition to summary judgment. Rather, they first challenged the requirement in their second motion for reconsideration, and they raise some of their arguments for the first time on appeal. "[I]n an appeal contesting an adverse grant of summary judgment," "a party cannot assert arguments that were not presented to the district court in opposing summary judgment." *Trs. of Electricians' Salary Deferral Plan v. Wright*, 688 F.3d 922, 926 (8th Cir. 2012) (quoting *Cole v. Int'l Union*, 533 F.3d 932, 936 (8th Cir. 2008)); *see also Winthrop Res. Corp. v. Eaton Hydraulics, Inc.*, 361 F.3d 465, 469 (8th Cir. 2004) (declining to consider arguments first raised in Rule 59(e) motion). The Millers have not preserved these arguments for appellate review, and thus we will not consider them. Accordingly, we proceed to consider whether the district court properly concluded that there was no genuine dispute whether the District acted in bad faith or with gross misjudgment.

In order to establish bad faith or gross misjudgment, a plaintiff must show that the defendant's conduct "depart[ed] substantially from 'accepted professional judgment, practice or standards [so] as to demonstrate that the person[s] responsible actually did not base the decision on such a judgment.'" *M.Y.*, 544 F.3d at 889 (quoting *Monahan v. Nebraska*, 687 F.2d 1164, 1170-71 (8th Cir. 1982)) (third alteration in original). Because the ADA and § 504 do not "creat[e] general tort liability for educational malpractice," bad faith or gross misjudgment requires "something more" than mere non-compliance with the applicable federal statutes. *Monahan*, 687 F.2d at 1170. The defendant's statutory non-compliance must deviate

so substantially from accepted professional judgment, practice, or standards as to demonstrate that the defendant acted with wrongful intent. *M.Y.*, 544 F.3d at 889.

The Millers identify several facts that they believe support a showing of bad faith or gross misjudgment by the District. They rely heavily on OCR's findings that the District failed to comply with certain regulations implementing § 504 and the ADA. They also cite several other facts, including (1) the District's repeated suspensions of B.M.; (2) the District's insistence that it first evaluate B.M. under the IDEA, which could have resulted in him being placed in special education; (3) the District's failure to conclude that B.M. qualified for accommodation under § 504 until December 2008, even though Elliston's original proposal to evaluate him under the IDEA suggests notice of his possible disability as early as December 2007; and (4) the District's failure to implement an adequate § 504 plan until March 2009.

These facts, even when viewed in the light most favorable to the Millers, do not show bad faith or gross misjudgment by the District. The Millers have not presented any evidence regarding what an accepted professional judgment would have been under the circumstances or how the District's conduct substantially departed from such a judgment. Nor do these facts support even an inference of wrongful intent by the District. Most of the facts cited by the Millers amount to nothing more than possible instances of statutory non-compliance. As noted above, statutory non-compliance alone does not constitute bad faith or gross misjudgment. Our cases require "something more," and here the Millers have not made that showing.

The Millers' allegations that the District delayed § 504 evaluation and accommodation, despite having notice of B.M.'s disability, do not support a finding of bad faith or gross misjudgment. Under some circumstances, notice of a student's disability coupled with delay in implementing accommodations can show bad faith or gross misjudgment. *See, e.g.*, *M.P. ex rel. K. v. Indep. Sch. Dist. No. 721*, 326 F.3d 975, 982-83 (8th Cir. 2003). However, in this case, the delays must be evaluated

within the context of the District's numerous and continuous attempts to assist B.M. The District was the first party to propose accommodation for B.M., repeatedly seeking authorization to pursue the IDEA evaluation process. Ms. Miller refused three times to authorize those evaluations. Even so, the District continued to cooperate with Ms. Miller in seeking to address B.M.'s behavioral issues. Elliston and Dr. Storm each met with Ms. Miller numerous times regarding B.M. Elliston encouraged Ms. Miller to seek counseling for B.M. and provided her with information about outside resources that might be helpful. The District's teachers cooperated with Dr. MacElroy's request that they provide their observations of B.M. at school. The District permitted Grayson to observe B.M. in class and implemented her recommendations regarding the "chill-out room" and B.M.'s teacher assignment. At Ms. Miller's request, the District assigned B.M. a "facilitator" to assist him in class and replaced the facilitator at Ms. Miller's direction. Once the District finally was able to complete an IDEA evaluation, it promptly implemented a § 504 plan and then twice revised it to address Ms. Miller's concerns. Nothing in the record suggests anything more than disagreement between a school and a concerned parent as both struggled to meet B.M.'s needs. Under these circumstances, the ADA and § 504 do not permit the federal courts to second-guess the educational decisions of school officials. In light of the District's persistent efforts to aid B.M., no reasonable jury could conclude that the delays in accommodating him resulted from bad faith or gross misjudgment by the District. *See Smith v. Hy-Vee, Inc.*, 622 F.3d 904, 907 (8th Cir. 2010) (explaining that summary judgment is appropriate when "no reasonable jury could return a verdict for the non-moving party").

## III. Conclusion

Because the Millers have failed to present evidence of bad faith or gross misjudgment by the District—an essential element of their claims—we affirm the district court's judgment.

_____