# United States Court of Appeals

### For the Eighth Circuit

_____

No. 14-2587
_____

Western Heritage Insurance Company

*Plaintiff - Appellee*

v.

Asphalt Wizards

*Defendant*

Fun Services of Kansas City

*Defendant - Appellant*

1-50 Doe

*Defendant*

_____

No. 14-2697
_____

Western Heritage Insurance Company

*Plaintiff - Appellant*

v.

Asphalt Wizards, doing business as Parrish Love; Fun Services of Kansas City, Inc.

*Defendants - Appellees*

1-50 Doe

*Defendant*

_____

Appeals from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: April 13, 2015
Filed: July 30, 2015

_____

Before WOLLMAN and GRUENDER, Circuit Judges, and DOTY,[1] District Judge.

_____

GRUENDER, Circuit Judge.

This is a declaratory judgment action brought by an insurer concerning its duties with respect to a "junk fax" lawsuit brought against its insured. The district court[2] dismissed counterclaims brought against the insurer and found that it had no duty to indemnify. We affirm.

_____

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota, sitting by designation.

[2]The Honorable David Gregory Kays, Chief Judge, United States District Court for the Western District of Missouri.

## I.    Background

Asphalt Wizards, a parking-lot repair business, hired a company to fax advertisements to potential customers. From 2005 until 2008, more than 44,000 faxes were sent on Asphalt Wizards's behalf.  Fun Services of Kansas City ("Fun Services"), which received some of these faxes, filed a class-action petition in Missouri state court alleging that (1) Asphalt Wizards violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by sending these faxes, and (2) that Asphalt Wizards committed conversion by commandeering the recipients' fax machines.  For the alleged TCPA violations, Fun Services and the class are seeking statutory damages of $500 for each fax.[3]  *See id.* § 227(b)(3)(B).

Shortly after the lawsuit was filed, Asphalt Wizards notified its insurer, Western Heritage Insurance Company ("Western Heritage"), about it.  Western Heritage had insured Asphalt Wizards through three sequential, year-long policies from May 18, 2004 until May 18, 2007, the time frame when roughly 33,000 of the faxes were sent.  The policies covered property damage and personal and advertising injury.  Each of the policies also contained a deductible endorsement that provided

---

[3]At oral argument, Fun Services attempted to assert that class members could receive treble damages of $1,500 for each fax for a willful or knowing violation of the TCPA.  47 U.S.C. § 227(b)(3).  But Fun Services's briefs contain no argument that Asphalt Wizards's alleged violations of the TCPA were willful or knowing.  Furthermore, in response to an interrogatory during discovery, Fun Services stated that it was not seeking treble damages.  In addition, in its memorandum in support of its motion for class certification, Fun Services informed the state court that "the maximum recovery for each class member is only $500."  Fun Services's briefs also assert that class members could receive actual damages under the TCPA that would exceed statutory damages of $500 per fax.  *See id.*  However, Fun Services does not identify any evidence to support this bald assertion.

for a $1,000 "per claim" deductible amount for property damage and for personal and advertising injury. This deductible amount applied to "all damages sustained by one person or organization as the result of any one claim" as well as to "legal expenses incurred in the handling and investigation of each claim."

In a letter dated June 26, 2008, Western Heritage responded to Asphalt Wizards's request for coverage. Western Heritage reminded Asphalt Wizards of its policy limits, including the $1,000 deductible amount, and stated that Western Heritage had hired a law firm to represent Asphalt Wizards. Western Heritage's letter did not say that this legal defense was being provided under a reservation of rights. Thereafter, the law firm hired by Western Heritage began defending Asphalt Wizards, and this legal defense continued for the next four years. However, on October 29, 2012, Western Heritage sent a second letter to Asphalt Wizards. This letter, styled a "supplement" to the prior one, stated that Western Heritage now intended to defend Asphalt Wizards subject to a reservation of rights.

Western Heritage filed this action against Asphalt Wizards and Fun Services seeking a declaration that it owed no duty to defend and no duty to indemnify in connection with the class-action lawsuit. Fun Services then pleaded counterclaims for declaratory relief against Western Heritage, one of which the district court dismissed for lack of standing under Federal Rule of Civil Procedure 12(b)(1). Western Heritage and Fun Services moved for summary judgment. The district court determined that Fun Services lacked standing to bring its remaining counterclaims, and the court determined that Western Heritage had a duty to defend but did not have a duty to indemnify.[4] With respect to the duty-to-indemnify issue, the court found that Western Heritage had waived its defenses to coverage by waiting four years to issue a reservation-of-rights letter. However, the court concluded that Western

_____

[4]Western Heritage's briefs do not contest the district court's determination that it has a duty to defend.

-4-

Heritage did not waive the deductible endorsements. The $1,000 deductible amount, the court explained, applied separately to each fax. Reasoning that one fax could not create damages and legal expenses in excess of $1,000, the court found no duty to indemnify. Fun Services appeals, and Western Heritage cross-appeals.

## II. Discussion

### A. Fun Services's Counterclaims

Fun Services disputes the district court's conclusion that it lacks standing to bring counterclaims. We review this issue *de novo*. *St. Paul Area Chamber of Commerce v. Gaertner*, 439 F.3d 481, 484 (8th Cir. 2006). The district court concluded that, under Missouri law, Fun Services lacks standing to sue Western Heritage about the meaning of the insurance policies because Fun Services has not obtained a judgment against Asphalt Wizards. We agree. *See Camden v. Mo. Intergovernmental Risk Mgmt. Ass'n*, 258 S.W.3d 547, 558 (Mo. Ct. App. 2008); *see also State Farm Mut. Auto. Ins. Co. v. Allen*, 744 S.W.2d 782, 785-86 (Mo. 1988). In the absence of standing to sue under state law, the district court deemed itself bound by the rule that "[i]n a diversity case, a court will not address a plaintiff's claims unless the plaintiff meets the 'case or controversy' requirements of article III of the Constitution *and* also has standing to sue under the relevant state law." *Wolfe v. Gilmour Mfg. Co.*, 143 F.3d 1122, 1126 (8th Cir. 1998) (emphasis added). The district court's reasoning accords with our precedent, which has asked whether a third-party claimant has standing to sue an insurer under state law in a diversity action requesting declaratory relief. *Glover v. State Farm Fire & Cas. Co.*, 984 F.2d 259, 260 (8th Cir. 1993) (per curiam). We acknowledge that the dismissal of Fun Services's counterclaims creates a potentially odd result: Western Heritage sued Fun Services concerning the meaning of the insurance policies, yet Fun Services lacks standing at this stage to assert counterclaims about the same subject. Other courts have permitted a third-party claimant to bring a claim for declaratory relief against

an insurer in similar circumstances. *Morell v. Star Taxi*, 343 F. App'x 54, 57-58 (6th Cir. 2009); *Miller v. Augusta Mut. Ins. Co.*, 157 F. App'x 632, 636-38 (4th Cir. 2005) (per curiam). However, in light of *Glover*, we affirm the district court's dismissal of Fun Services's counterclaims.

### B.      Western Heritage's Duty to Indemnify

The heart of this case concerns Western Heritage's duty to indemnify Asphalt Wizards. In granting summary judgment to Western Heritage, the district court determined that Western Heritage had waived its defenses to coverage by failing to issue a timely reservation of rights, that the deductible endorsements were not a defense to coverage, and that because no "claim" could exceed the $1,000 deductible amount, Western Heritage did not have a duty to indemnify. Because it ultimately is dispositive of this appeal, we focus on the meaning of the deductible endorsements.

We review the district court's grant of summary judgment as well as its interpretation of the insurance policies *de novo*. *United Fire & Cas. Co. v. Titan Contractors Serv., Inc.*, 751 F.3d 880, 883 (8th Cir. 2014). Summary judgment is proper only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party receives the benefit of all reasonable inferences supported by the evidence but must "come forward with specific facts showing that there is a genuine issue for trial." *B.M. ex rel. Miller v. S. Callaway R-II Sch. Dist.*, 732 F.3d 882, 886 (8th Cir. 2013) (quoting *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1207 (8th Cir. 2013)). "A complete failure by the non-moving party 'to make a showing sufficient to establish the existence of an element essential to that party's case necessarily renders all other facts immaterial.'" *Id.* (ellipsis omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). The parties agree that Missouri substantive law applies here. As such, we are bound by the Supreme Court of Missouri's decisions. *United Fire & Cas. Co.*, 751 F.3d at 883. In the absence of a decision by

that court, we must predict how it would rule, and we follow the decisions of Missouri's intermediate courts when they constitute the best evidence of Missouri law. *Id.*

Fun Services first argues that the deductible endorsements amount to a defense to coverage and that because the district court found that Western Heritage waived its defenses to coverage, it necessarily waived the application of the deductible endorsements as well. Fun Services's assertion that the deductible endorsements have been waived is without merit. Under Missouri law, an insurer's failure to mention a policy limit—*i.e.*, the maximum amount of coverage—in a letter denying coverage does not preclude the insurer from later asserting that policy limit. *Martin v. U.S. Fid. & Guar. Co.*, 996 S.W.2d 506, 511 (Mo. 1999). A contrary rule would "create coverage where none existed under the policy in the first place." *Id.* In reaching this conclusion, the *Martin* court distinguished between a policy limit, which an insurer cannot be precluded from asserting, and a defense to coverage, which an insurer can be estopped from raising. *Id.* *Martin* accords with the general rule that "[w]hile the defense of the action by an insurer without reservation of rights as to its defenses may constitute a waiver of the insurer's defenses, it does not rewrite the policy so as to remove the maximum on the coverage provided." 14 Steven Plitt et al., Couch on Insurance § 202:74 (3d ed. 1995); *see also Chemstar, Inc. v. Liberty Mut. Ins. Co.*, 42 F.3d 1399, at *1 (9th Cir. 1994) (unpublished table disposition).

Fun Services asks us to characterize the deductible endorsements as a defense to coverage, meaning that they can be waived. At least one court has found that an insurer can be precluded from raising a policy's deductible amount by failing to issue a reservation of rights. *Am. Home Assurance Co. v. Ozburn-Hessey Storage Co.*, 817 S.W.2d 672, 674-75 (Tenn. 1991). However, in light of *Martin* and the general rule preventing the waiver of policy limits, we predict that the Supreme Court of Missouri would find that the deductible endorsements cannot be waived. At bottom, we think the deductible endorsements operate more like a policy limit than a defense to

coverage. The deductible endorsements function as an apportionment of loss between the insurer and the insured. *See* Black's Law Dictionary 444 (8th ed. 2004) (defining "deductible" as "the portion of the loss to be borne by the insured before the insurer becomes liable for payment"). To hold that the deductible endorsements can be waived would, like barring an insurer from asserting policy limits, "create coverage where none existed under the policy in the first place." *Martin*, 996 S.W.2d at 511. In this sense, the deductible endorsements are analogous to the policy limit considered in *Martin*. *See Cincinnati Ins. Co. v. All Plumbing Inc. Serv., Parts Installation*, 64 F. Supp. 3d 69, 79-80 (D.D.C. 2014) (stating that courts and commentators "consistently conclud[e] that deductible limits may be asserted even in the absence of a reservation of rights"), *appeals filed*, Nos. 14-7140 & 14-7151 (D.C. Cir. 2014). We therefore agree with the district court that Western Heritage did not waive its ability to enforce the deductible endorsements.

Fun Services next disputes the district court's interpretation of the deductible endorsements. Under Missouri law, if the language of a policy is unambiguous, then it will be enforced as written. *Rice v. Shelter Mut. Ins. Co.*, 301 S.W.3d 43, 47 (Mo. 2009). But if the language is ambiguous, then it will be construed against the insurer. *Id.* "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions." *Jones v. Mid-Century Ins. Co.*, 287 S.W.3d 687, 690 (Mo. 2009) (quoting *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. 2007)). When interpreting an insurance policy, Missouri courts apply the meaning that would be given to the policy by an "ordinary person of average understanding if purchasing insurance." *Burns v. Smith*, 303 S.W.3d 505, 509 (Mo. 2010) (quoting *Seeck*, 212 S.W.3d at 132).

The deductible endorsements state:

A.  The Company's obligations under the coverages afforded by this policy to pay damages on behalf of the Insured apply only to the amount of damages in excess of the [$1,000] deductible amount stated above.

B.  The [$1,000] deductible amount applies to all damages sustained by one person or organization as the result of any one claim.

C.  The [$1,000] deductible amount stated shall also apply towards investigation, adjustment and legal expenses incurred in the handling and investigation of each claim, whether or not payment is made to claimant, compromise settlement is reached or claim is denied.

The district court determined that the term "claim" as used in Section B unambiguously connotes that the $1,000 deductible amount applies separately to each fax.  The district court reasoned that damages and legal expenses from one fax could not exceed $1,000.  Fun Services counters with three arguments.

First, Fun Services argues that the term "claim" could be interpreted to mean an insured's request for insurance coverage.  Under this interpretation, Fun Services only would have to meet the deductible amount once each policy year.  However, an ordinary person purchasing insurance would not interpret the term "claim" to mean an insured's request for coverage.  To begin with, the deductible endorsements tie the term "claim" to the damages sustained by "one person or organization" as opposed to the damages sustained by the "Insured," an individual who is specifically identified in the deductible endorsements.  Furthermore, an ordinary person would not conclude, as Fun Services argues, that an insured sustains damages as the result of a request for insurance coverage.  Instead, it is a third-party claimant who sustains damages as the result of an insured's conduct.  Accordingly, an ordinary person would interpret the term "claim" to mean a third-party claimant's assertion of damages against an insured, not an insured's request for insurance coverage.  *See*

*Musmeci v. Schwegmann Giant Super Mkts., Inc.*, 332 F.3d 339, 353 (5th Cir. 2003) ("Generally speaking, a 'claim' in a liability policy is considered to be an assertion by a third-party to the effect that the insured has caused the claimant damages . . . and that the claimant intends to hold the insured responsible for all or a portion of the damages so caused." (alteration omitted) (quoting 20 Eric M. Holmes, Holmes' Appleman on Insurance 2d § 130.2 (2002))).

Second, Fun Services argues that an ordinary person could interpret the term "claim" to refer to the entire class-action lawsuit, again meaning that Asphalt Wizards only has to meet the $1,000 deductible amount once each policy year. But the deductible endorsements state that the deductible amount applies to damages sustained by "one person or organization." It follows that the term "claim" cannot encompass the entire class-action lawsuit, which potentially consists of damages sustained by many persons or organizations. The deductible endorsements therefore unambiguously connote that the term "claim" must be applied on a per-person or a per-organization basis. *See, e.g.*, *Capitol Indem. Corp. v. Miles*, 978 F.2d 437, 438-39 (8th Cir. 1992) (construing the term "claim" in an insurance policy to apply separately to each injured third party's assertion of damages); *Musmeci*, 332 F.3d at 354 ("We are . . . unable to accept the district court's conclusion that the action by the Plaintiff class should be considered a single claim.").

Finally, Fun Services contends that the district court erred by determining that the term "claim" unambiguously encompasses each fax sent. Fun Services proposes that an ordinary person could interpret the term "claim" to mean a third-party claimant's assertion of damages from all of the faxes sent to the claimant in a policy year. *See* Black's Law Dictionary 264 (8th ed. 2004) (defining "claim" as "[t]he aggregate of operative facts giving rise to a right enforceable by a court"). Under this interpretation, if a class member received two faxes in a policy year, statutory damages under the TCPA would be $1,000 ($500 x 2 faxes), to which the legal expenses associated with those faxes (which the parties agree exist) and damages for

conversion would be added. Thus, the $1,000 deductible amount for that year would be met and a duty to indemnify would exist.

Assuming without deciding that an ordinary person could adopt this interpretation of "claim," we find that Fun Services nonetheless has failed to come forward with facts showing a genuine dispute about whether a class member received more than one fax in a policy year. *See B.M. ex rel. Miller*, 732 F.3d at 886. Although Fun Services's briefs assert that a reasonable person could adopt this broader interpretation of "claim," Fun Services fails to take the additional and necessary step of demonstrating a genuine dispute for trial about whether a class member actually received more than one fax in a policy year. By way of example, the briefs do not mention which policy year or years a class member received more than one fax, nor do the briefs discuss how many class members, or which ones, fall into this category. "Without some guidance, we will not mine a summary judgment record searching for nuggets of factual disputes to gild a party's arguments." *Rodgers v. City of Des Moines*, 435 F.3d 904, 908 (8th Cir. 2006).

The closest that Fun Services's briefs come to providing any guidance on this topic is a single statement—contained only in the statement-of-the-case section, not the argument section, of its opening brief—that the faxes went to 13,276 unique fax numbers. For this figure, Fun Services directs us to two documents in the summary-judgment record. First, Fun Services cites Western Heritage's statement before the district court that "Fun Services asserts there were 13,267 'unique' fax numbers on the list Asphalt Wizards sent to [the fax company]." This statement is merely an acknowledgement of Fun Services's argument. *Cf. Bennett v. Nucor Corp.*, 656 F.3d 802, 820 (8th Cir. 2011) (stating that "conclusory assertions . . . [are] insufficient to survive summary judgment"). Second, Fun Services refers us to the state court's decision granting class certification, which observed that Asphalt Wizards "has produced an aggregate list of 13,276 unique fax numbers that were sent to [the fax company] for use in this blast fax campaign." However, Fun Services's briefs do not

-11-

point us to this "aggregate list" in the summary-judgment record, *see Rodgers*, 435 F.3d at 908, and we have been unable to locate it there, *cf. Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 988 F.2d 61, 63 (8th Cir. 1993) ("Generally, an appellate court cannot consider evidence that was not contained in the record below.").

For these reasons, we conclude that Fun Services has failed to "come forward with specific facts showing that there is a genuine issue for trial." *B.M. ex rel. Miller*, 732 F.3d at 886 (quoting *Atkinson*, 709 F.3d at 1207). Thus, even if an ordinary person could define "claim" to include multiple faxes sent to one class member during a policy year, Fun Services has not raised a genuine dispute of material fact about whether any class member received more than one fax in a policy year.[5] As a result, the grant of summary judgment to Western Heritage on the duty-to-indemnify issue was appropriate.

## III.    Conclusion

For the reasons described above, we affirm.

_____

_____

[5]Fun Services does not provide any argument that the district court miscalculated the amount of legal expenses. *See Milligan v. City of Red Oak*, 230 F.3d 355, 360 (8th Cir. 2000) (per curiam) (stating that arguments not made in a brief are waived). And Fun Services does not provide any evidence to rebut the district court's conclusion concerning possible damages for conversion. *See B.M. ex rel. Miller*, 732 F.3d at 886. Even adding legal expenses for one fax and damages for conversion for one fax to $500 in statutory damages for violating the TCPA, the district court reasoned that the $1,000 deductible amount cannot be met.