# United States Court of Appeals

### For the Eighth Circuit

―――――――――――――――

No. 22-2669

―――――――――――――――

Rodney Baker and Jayme Baker, individually and as next friends of I.B., a minor

*Plaintiffs - Appellants*

v.

Bentonville School District

*Defendant - Appellee*

―――――――――

Appeal from United States District Court
for the Western District of Arkansas - Fayetteville

―――――――――

Submitted: April 13, 2023
Filed: July 27, 2023

―――――――――

Before LOKEN, SHEPHERD, and KELLY, Circuit Judges.

―――――――――

LOKEN, Circuit Judge.

Rodney and Jayme Baker, individually and as next friends of their minor daughter, I.B., appeal the district court's[1] dismissal of disability discrimination and civil rights deprivation claims, and denial of their motion to reconsider dismissing

―――――――――――――――――――

[1] The Honorable P.K. Holmes, III, United States District Judge for the Western District of Arkansas.

with prejudice a state law negligence claim against the Bentonville, Arkansas School District ("the District"). Reviewing the grant of summary judgment *de novo*, B.M. ex rel. Miller v. S. Callaway R-II Sch. Dist., 732 F.3d 882, 886 (8th Cir. 2013), and the exercise of supplemental jurisdiction for abuse of discretion, Brown v. Mortg. Elec. Registration Sys., Inc., 738 F.3d 926, 933 (8th Cir. 2013), we affirm.

## I. Background

I.B. is a minor child with vision issues since birth. She is farsighted in both eyes, her eyes cross inward and cannot look in the same place at the same time, and her left eye has poorer vision than her right eye. In June 2017, before I.B. started kindergarten at Cooper Elementary in the District, her ophthalmologist submitted to the District an Educational Services for the Visually Impaired form listing I.B.'s visual acuity as within the "normal" range (20/70 or stronger in the better-seeing eye with correction) but stating that I.B. may benefit from a plan designed to meet her individual educational needs.

One week before I.B. started kindergarten in August, her mother met with the assistant principal and the school nurse to discuss a potential plan. Ms. Baker described I.B. as "very accident prone" and unable to distinguish between gendered bathrooms. The District and Ms. Baker agreed to implement a § 504 Plan[2] (the "§ 504 Plan 1") that would provide I.B. with large print materials, close teacher

---

[2]This is a document that describes the regular or special education and related aids and services a disabled student will be provided by a federally-funded public educational agency to comply with § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a). An individualized § 504 plan is not required by the statute or implementing regulations but is encouraged and commonly used. It typically includes a school district's plans for compliance with the broader statutory mandate to provide a free appropriate public education in the Individuals with Disabilities Education Act ("IDEA"). See 20 U.S.C. § 1412(a)(1).

supervision during classroom transitions and activities, a "buddy" for errands and bathroom breaks, and "specialized transportation" (referred to as the safety bus).[3]

Between August 15 and September 7, I.B. suffered four relatively minor injuries while at school or on the playground. A fifth injury occurred on October 24 when another student kicked I.B. in the face on the monkey bars. In response to Ms. Baker's concerns, the District met with I.B.'s parents and a District vision specialist. Ms. Baker voiced concerns about I.B.'s safety during large-group playtime. The District agreed to update the § 504 plan to include "[s]afety precautions for unfamiliar areas and in PE class" (the "§ 504 Plan 2"). Three days later, I.B. suffered a sixth injury, tripping on a concrete slab in the playground. At Ms. Baker's request, a § 504 plan meeting was held on November 3. The District agreed in "§ 504 Plan 3" to heightened playground supervision and to provide recess teachers with additional training on I.B.'s vision limitations. It did not agree to all of Ms. Baker's demands.[4]

I.B. did not sustain any school injuries after the District implemented § 504 Plan 3. In February 2018, the District converted § 504 Plan 3 to an Individualized Education Program ("IEP") because I.B.'s new eye drops blurred her vision.[5] Like

_____

[3]I.B.'s classroom teacher and other teachers responsible for I.B. immediately implemented § 504 Plan 1 when the school year began. The District's two vision specialists conducted a Functional Vision Assessment ("FVA") of I.B. in the fall of 2017 and reported that I.B. appeared to have a normal vision range, walked efficiently around the school, and proficiently navigated obstacles such as stairs and curbs. But they designated I.B. as a visually-impaired student, recommended that she receive 60 minutes of vision services per week, and proposed several classroom-specific accommodations.

[4]I.B.'s § 504 Plan 3 did not reinstate her on the safety bus, but the District put I.B. back on the safety bus about one week later, as requested by I.B.'s pediatrician.

[5]The IEP is a statutorily mandated compliance document required by the IDEA. See 20 U.S.C. §§ 1401(9)(d), 1414(d)(1)(A); I.Z.M. v. Rosemount-Apple Valley -Eagan Pub. Sch., 863 F.3d 966, 968 (8th Cir. 2017).

I.B.'s § 504 plans, the IEP designated her as visually impaired. After the school year, I.B.'s parents enrolled her at Pea Ridge School District for the 2018-2019 school year. At both Cooper Elementary and Pea Ridge, I.B. excelled academically. The Cooper Elementary vision specialist described her as a "very smart little girl" who "was already reading" in kindergarten. Ms. Baker testified that I.B. did not struggle with her schoolwork. In 2019, the family moved to North Carolina.

In November 2017, I.B. started experiencing staring-spell seizures. Her neurologist diagnosed epilepsy in August 2018. Subsequent tests in 2019 were normal, and the neurologist could not determine a cause of the seizures. In August 2020, I.B.'s parents (Plaintiffs) commenced this damages action against the District in state court. Plaintiffs allege that I.B.'s six injuries at Cooper Elementary caused her seizures. There is no evidence I.B. experienced head trauma at Cooper.

The District timely removed the action to the Western District of Arkansas. After discovery and extensive briefing, the District moved for summary judgment, assuming for purposes of the motion that I.B. is a visually-impaired student with a qualifying disability. The district court granted the District summary judgment dismissing all claims. Baker v. Bentonville Sch. Dist., 610 F. Supp. 3d 1157, 1167 (W.D. Ark. 2022). Plaintiffs appeal the dismissal of three claims; four are relevant to the issues on appeal. First, Plaintiffs alleged that the District discriminated against I.B. on the basis of her vision disability by failing to provide appropriate safety accommodations in violation of Title II of the Americans with Disabilities Act ("ADA"), § 504(a) of the Rehabilitation Act, and the Arkansas Civil Rights Act ("ACRA"). See 42 U.S.C. § 12132; 29 U.S.C. § 794(a); Ark. Code Ann. § 16-123-107(a). Second, Plaintiffs alleged that failure to provide safety accommodations deprived I.B. of her right under the Arkansas Constitution and ACRA to an adequate and equal education. See Ark. Const. art. 14, § 1; Ark. Code Ann. § 16-123-105(a). Third, Plaintiffs asserted a state-law negligence claim. Finally, in Count V, to avoid the District's immunity from negligence suits, Plaintiffs sought a declaratory judgment that the tort immunity statute, Ark. Code Ann. § 21-9-

-4-

301, is unconstitutional under the Arkansas Constitution because it "clearly and unmistakably conflicts with Article 2, Section 13."[6]

After granting summary judgment on the disability discrimination and civil rights deprivation claims, 610 F. Supp. 3d at 1164-66, the district court exercised supplemental jurisdiction and dismissed the negligence claim with prejudice, id. at 1166. But it declined to exercise supplemental jurisdiction over the state-law declaratory judgment claim and dismissed that claim without prejudice. Id. at 1167. Plaintiffs moved for reconsideration of the dismissal of their negligence claim with prejudice, arguing that ruling would bar Plaintiffs from pursuing a negligence claim against the District if they prevail on their declaratory judgment claim in a later action. The district court denied reconsideration. Baker v. Bentonville Sch. Dist., No. 5:20-CV-05207, 2022 WL 3368799, at *2 (W.D. Ark. July 27, 2022). This appeal followed.

## II. Disability Discrimination Claims

Title II of the ADA prohibits public entities -- including public schools -- from disability discrimination in services, programs, or activities. 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act prohibits state and local programs receiving federal financial assistance -- including public schools -- from discriminating against a "qualified individual with a disability . . . solely by reason of her or his disability." 29 U.S.C. § 794(a). "We have held that the enforcement, remedies, and rights are the same" under both statutes. B.M., 732 F.3d at 887 (quotation omitted). Likewise, we employ the same principles in deciding ACRA disability discrimination claims. See Duty v. Norton-Alcoa Proppants, 293 F.3d 481, 490 (8th Cir. 2002).

---

[6]Article 2, § 13 provides: "Every person is entitled to a certain remedy in the laws for all injuries or wrongs he may receive in his person, property or character."

Where alleged ADA and § 504 violations are based on educational services for disabled children, the plaintiff "must prove that school officials acted in bad faith or with gross misjudgment" to recover damages. B.M., 732 F.3d at 887 (quotation omitted). Over 40 years ago, Judge Richard Arnold explained why the text of § 504 requires this level of proof:

> [Section 504] is not, generally speaking, an affirmative-action statute. "[N]either the language, purpose, nor history of § 504 reveals an intent to impose an affirmative-action obligation on all recipients of federal funds." Southeastern Cmty. Coll. v. Davis, 442 U.S. 397, 411 (1979). Section 504, instead, is simply a prohibition of certain conduct on the part of recipients . . . .
>
> . . . The reference in the Rehabilitation Act to "discrimination" must require . . . something more than an incorrect evaluation, or a substantively faulty individualized education plan, in order for liability to exist. . . . An evaluation . . . is not discriminatory merely because a court would have evaluated the child differently.
>
> We do not read § 504 as creating general tort liability for educational malpractice . . . . [E]ither bad faith or gross misjudgment should be shown before a § 504 violation can be made out, at least in the context of education of handicapped children. . . . So long as the state officials involved have exercised professional judgment, in such a way as not to depart grossly from accepted standards among educational professionals, we cannot believe that Congress intended to create liability under § 504.

Monahan v. Nebraska, 687 F.2d 1164, 1170-71 (8th Cir. 1982). "Bad faith or gross misjudgment requires more than mere non-compliance with [for example, the IDEA mandate to provide a handicapped child a free appropriate public education]. The non-compliance must deviate so substantially . . . as to demonstrate that the defendant acted with wrongful intent." Richardson v. Omaha Sch. Dist., 957 F.3d 869, 876-77 (8th Cir. 2020) (quotation omitted). "This rule reflects . . . a proper balance between the rights of handicapped children, the responsibilities of state educational officials,

and the competence of courts to make judgments in technical fields." I.Z.M., 863 F.3d at 973 (quotation omitted).

After thoroughly reviewing the evidence regarding I.B.'s brief enrollment at Cooper Elementary, the district court concluded that "no reasonable juror could find that any staff member's conduct departed substantially from accepted professional judgment, practice, or standards so as to demonstrate . . . bad faith or gross misjudgment." 610 F. Supp. 3d at 1165. The court explained that (i) Ms. Baker agreed to the accommodations in I.B.'s § 504 plans; (ii) Cooper Elementary's § 504 coordinator explained the accommodations in § 504 Plan 1 and the need to watch I.B. at all times to teachers responsible for I.B.'s safety, including her kindergarten, physical education, and recess teachers; (iii) Plaintiffs admitted that I.B.'s kindergarten teacher was with I.B. during transitions and helped I.B. navigate stairs and unfamiliar areas; (iv) I.B.'s classroom went to the restroom in groups; (v) I.B. was supposed to tell her teacher where she wanted to play while at recess; and (vi) the § 504 plan was amended twice and Ms. Baker approved agreed-upon accommodations which included, after I.B.'s last injury, having the recess teacher watching I.B. wear a colored lanyard for easy identification. The court concluded that Plaintiffs provided no "compelling argument" why the District's reasons for not adopting Ms. Baker's other requested accommodations departed substantially from accepted professional judgment, practice, or standards. Id. at 1165-66.

On appeal, Plaintiffs argue the District acted in bad faith or with gross misjudgment when it treated I.B.'s accommodation plan as discretionary; failed to provide effective accommodations to ensure I.B.'s safety, resulting in injuries; and deliberately disregarded Plaintiffs' concerns and requests regarding I.B.'s safety at school. In support, Plaintiffs point to instances in which the District imperfectly followed I.B.'s § 504 plan, for example, by discontinuing the color-coded lanyard accommodation in § 504 Plan 3 without informing Ms. Baker.

As the district court explained, though I.B.'s vision consistently tested in the "normal" range, the District made consistent efforts to accommodate I.B.'s vision issues and ensure her safety at school by developing a § 504 individualized education plan; implementing § 504 Plan 1 as soon as I.B. started school; ensuring that I.B. was accompanied or monitored during classroom transitions, when navigating stairs and moving around the school, and during recess and playground activities; and modifying the § 504 plan twice. 610 F. Supp. 3d at 1165-66. The District took I.B.'s § 504 plans seriously. On this record, no reasonable fact-finder could conclude that the District failed to implement safety accommodations for I.B.'s vision issues.

Plaintiffs further argue the District did not adequately respond to I.B.'s injuries.[7] But the school nurse who treated the injuries testified, "[t]hese are very common injuries that I see on multiple children every day." The District quickly held § 504 plan meetings to address Ms. Baker's growing concerns after I.B.'s fifth and sixth injuries. Ms. Baker agreed to all three § 504 plans, and I.B. did not experience any injuries after § 504 Plan 3 was implemented. Though the District temporarily removed I.B. from the safety bus and denied Ms. Baker's request for a personal aide in the revised § 504 plans, at no point did the District ignore Ms. Baker or refuse to consider whether additional steps needed to be taken to protect I.B. at school.

The undisputed evidence in this case makes it quite unlike M.P. ex rel. K. v. Indep. Sch. Dist. No. 721, 326 F.3d 975 (8th Cir. 2003), on which Plaintiffs heavily rely. In that case, we reversed the grant of summary judgment dismissing the § 504 claim because a reasonable jury could infer bad faith when the school district's health professional disclosed a child's schizophrenia to the school community, widespread peer bullying and harassment followed, and the school district ignored his mother's

---

[7]The school nurse treated I.B.'s first and fourth injuries and reported them to Ms. Baker. The safety bus driver informed Ms. Baker about the second injury. Ms. Baker personally observed the third injury.

repeated calls about the student's safety and failed to update his § 504 plan to deal with the peer harassment. Id. at 977-78, 982.

Section 504 requires "something more than an incorrect evaluation, or a substantively faulty individualized education plan, in order for liability to exist," Monahan, 687 F.2d at 1170, and it requires more than non-compliance with the IDEA statutory mandate to provide a free appropriate public education, B.M., 732 F.3d at 888. We agree with the district court that Plaintiffs failed to make the required showing. Plaintiffs demonstrated disagreement between a school district and concerned parents as both struggled to meet the needs of a visually-impaired student. But we will not "second-guess the educational decisions of school officials," id., and no conduct substantially departing from accepted professional judgment, practice, or standards was shown. We therefore affirm the district court's grant of summary judgment dismissing Plaintiffs' disability discrimination claims.

### III. ACRA Civil Rights Deprivation Claim

Article 14, § 1 of the Arkansas Constitution provides that Arkansas "shall ever maintain a general, suitable and efficient system of free public schools and shall adopt all suitable means to secure to the people the advantages and opportunities of education." Under Arkansas law, this provision creates an "absolute [constitutional] duty . . . to provide an adequate education to each school child, as well as an equal education to each school child." Walker v. Ark. State Bd. of Educ., 365 S.W.3d 899, 910 (Ark. 2010). Plaintiffs claim the District is liable for damages under the civil rights provision of ACRA, Ark. Code Ann. § 16-123-105(a), because it deprived I.B. of her right to an adequate and equal education by failing to implement appropriate safety accommodations and to provide adequate supervision, which resulted in injuries that "effectively depriv[ed]" I.B. of her constitutional right to an adequate and equal education. They cite no Arkansas case applying this standard in factually analogous circumstances.

The district court granted summary judgment dismissing this ACRA civil rights deprivation claim because Plaintiffs provided no evidence "that would allow a reasonable juror to determine [I.B.] did not receive an adequate or equal education." 610 F. Supp. 3d at 1166. The District provided safety accommodations and updated I.B.'s § 504 plans to combat the injuries she sustained. I.B. was placed back on the safety bus, sustained no injuries after § 504 Plan 3 was implemented, and succeeded academically. For the reasons stated in Part II, we agree and therefore affirm the grant of summary judgment dismissing this claim.

### IV. Supplemental Jurisdiction Issues

Plaintiffs appeal the district court's retention of supplemental jurisdiction over their negligence claim against the District and the dismissal of that claim with prejudice. See 28 U.S.C. § 1367. Plaintiffs contend that the district court should have declined jurisdiction over their negligence claim as well as their claim seeking a declaratory judgment that Arkansas's tort immunity statute is unconstitutional. A district court's decision whether to exercise supplemental jurisdiction over pendent state-law claims "after dismissing every claim over which it had original jurisdiction is purely discretionary." Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009), citing § 1367(c); see Brown, 738 F.3d at 933.

In most cases, when federal and state claims are joined and the federal claims are dismissed by summary judgment, "the pendent state claims are dismissed without prejudice to avoid needless decisions of state law as a matter of comity and to promote justice between the parties." Ivy v. Kimbrough, 115 F.3d 550, 552-53 (8th Cir. 1997) (cleaned up). The Arkansas tort immunity statute provides that no negligence action "shall lie against any [school district] because of the acts of its agents and employees." Ark. Code Ann. § 21-9-301(b). Plaintiffs in Count V sought a declaratory judgment that this statute violates the Arkansas Constitution. As the district court noted, the Supreme Court of Arkansas has repeatedly held that the statute does not violate article 2, § 13 of the Arkansas Constitution. See White v.

-10-

City of Newport, 933 S.W.2d 800, 803 (Ark. 1996). It was not an abuse of the court's § 1367(c) discretion to decline to rule on Plaintiffs' claim for declaratory judgment declaring the statute unconstitutional because that is an "issue[] of state law on which there was little basis for dispute." Brown, 738 F.3d at 933-34 (quotation omitted); accord Doe v. Dardanelle Sch. Dist., 928 F.3d 722, 728 (8th Cir. 2019).

Turning to Plaintiffs' negligence claim under Arkansas law, the district court ruled: "Because the District is immune from suit, Plaintiffs' negligence claim against the District is dismissed with prejudice." 610 F. Supp. 3d at 1166. Where a federal court has expended time and resources to resolve federal claims, it is "both fair to the parties and a proper application of comity" for the court to resolve a state law claim derived from a common nucleus of operative fact where "[t]he causes of action are not novel . . . [and] involved well-understood and settled principles of Arkansas law." Brown, 738 F.3d at 933 (citations omitted). Here, Arkansas law was well-settled:

> Arkansas has a long-standing public policy of governmental immunity. The Arkansas Legislature has declared by statute that school districts are immune from suit in tort for injuries caused by the acts of their agents or employees.

Waire v. Joseph, 825 S.W.2d 594, 598 (Ark. 1992) (citing Ark. Code Ann. § 21-9-301). As the District therefore has a clear immunity defense to Plaintiffs' negligence claim, the district court did not abuse its § 1367(c) discretion by exercising supplemental jurisdiction and dismissing this claim with prejudice. See, e.g., Brown, 738 F.3d at 933-34.

Plaintiffs argue that the effect of the district court's combined supplemental jurisdiction rulings violates the "long-held principle . . . that every individual is entitled to a remedy at law for the wrongs done to them," citing Ark. Const. art. II, § 13, the basis for Count V of their Complaint. Plaintiffs explain that dismissing their negligence claims with prejudice effectively bars them from pursuing their

-11-

declaratory judgment claim in a later action, because even if they succeeded in overturning § 21-9-301, they would be claim-precluded from then bringing a negligence action against the District.

Assuming but not deciding a subsequent negligence claim against the District would be claim-precluded, Plaintiffs' contention they have been left without a remedy is a problem of their own making. Arkansas law provides a direct cause of action against the liability insurer of a school district that is "not subject to suit for tort." Ark. Code Ann. § 23-79-210(a)(1); see § 21-9-301(a). Plaintiffs' Complaint named "John Doe" as an additional defendant, alleged on information and belief that the District maintained liability insurance, identified the insurer as John Doe, and stated that "the joinder of [John Doe] will be made upon verification of its identity." Eleven months later, the district court ordered Plaintiffs to show good cause for an extension of the deadline to add parties, if they opposed dismissal of the John Doe defendant without prejudice. When Plaintiffs did not respond, the district court dismissed John Doe without prejudice, leaving the District, with its statutory immunity, the only negligence defendant. Plaintiffs were not deprived of a remedy for the alleged negligence of District employees and agents. They forfeited a facially adequate statutory remedy. Cf. Deitsch v. Tillery, 833 S.W.2d 760, 763-64 (Ark. 1992)

For the foregoing reasons, the judgment of the district court is affirmed.

_____