**AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Respondent,**

v.

**Otis ST. CLAIR, Personal Representative for the Estate of Montrell St. Clair,**

**and**

**Anastasia McNutt, Appellants.**

**No. ED 92492.**

Missouri Court of Appeals, Eastern District, Division Four.

Sept. 8, 2009.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 21, 2009.

Application for Transfer Denied Nov. 17, 2009.

David C. Knieriem, Law Offices of David C. Knieriem, Clayton, MO, for Appellants.

Daniel E. Wilke, Kathy M. Wilke, Wilke & Wilke, P.C., St. Louis, MO, for Respondent.

KURT S. ODENWALD, Presiding Judge.

## Introduction

In a declaratory judgment action filed by Plaintiff American Family Mutual Insurance Company (American Family) against Defendants Otis St. Clair, personal representative for the estate of deceased Montrell St. Clair (Driver), and Driver's passenger Anastasia McNutt (Passenger), (collectively referred to as Appellants), Appellants appeal the trial court's summary judgment order against them and in favor of American Family. In its order for summary judgment the trial court concluded that the Named Driver Exclusion provision of the insurance policy issued to Driver's mother, Brenda St. Clair (Mother), precluded coverage by American Family of the negligence of Driver on December 6, 2004. The court further concluded that American Family had and has no obligation under any policy to defend Driver or any other person for Driver's accident on December 6, 2004, and that American Family has no obligation to provide uninsured motorist benefits to Passenger in the accident on December 6, 2004. We affirm.

## Factual and Procedural Background

In approximately March 2001, American Family issued a policy of liability insurance, No. 0953–6392–01–74–FPPA–MO (Insurance Policy), to Mother, insuring a 2001 Chevrolet Cavalier. The Insurance Policy contained an agreement for liability coverage as shown in the declarations of the policy, in return for the premium payment. The Insurance Policy defined "insured person or insured persons" as "you or a relative"; a "relative" was defined as "a person living in your household, related to you by blood, marriage or adoption" and "you" and "your" was defined as "the policyholder named in the declarations and spouse, if living in the same household."

The Insurance Policy covered "accidents, occurrences, and losses" that occur during the policy period. The Insurance Policy further stated,

> This policy may be continued for successive policy periods by the payment of the required premium on or before the effective date of each policy period. If the premium is not paid when due, this policy will terminate at the end of the last policy period for which the premium was paid.... The premium shown in the declarations is for the first policy period. We will compute the premium for each policy period based upon our manuals.

The Insurance Policy contained a provision stating, "This policy and the declarations include all the agreements between you and us relating to this insurance. No change or waiver may be effected in this

policy except by endorsement issued by us." "Us" was defined by the Insurance Policy as "the company providing the insurance." The Insurance Policy's expiration/renewal date was September 2, 2004. The Insurance Policy also stated, "You may cancel this policy by returning it to us or by advising us when at a future date the cancel[l]ation is to be effective."

At the time of acquiring the Insurance Policy, Mother's child, Driver, was a resident of Mother's household but did not yet have his driver's license.

In August 2004, upon receipt of a bill in which Mother's Insurance Policy premium significantly increased, Mother telephoned American Family to request an explanation for this change. Debbie Franklin (Franklin), secretary to Mother's insurance agent Robert Ware (Ware), informed Mother that the premium had increased because American Family had learned that Mother's son, Driver, had obtained his driver's license and had been rated on the policy as of July 15, 2004. Franklin told Mother that if she did not want to pay the increased premium, Mother would have to exclude Driver as a driver on the Insurance Policy. Mother agreed and Franklin sent the Named Driver Exclusion Endorsement to her on August 6, 2004, for Mother's signature. The Named Driver Exclusion Endorsement to the Insurance Policy stated:

NAMED DRIVER EXCLUSION ENDORSEMENT—KEEP WITH POLICY

To issue or continue this policy, I agree that the following exclusion is added:

This policy does not apply under any of the coverages to any vehicle in the care, custody or control of, or while operated by [Driver] or any other person with his or her permission or at his or her direction.

All other terms, agreements, conditions, and provisions remain unchanged.

The Named Driver Exclusion gave directions for the insurance agent to countersign each copy, and have the insured sign each copy, giving one copy to the insured to "keep with policy," retain a copy in the agent's file, and return a copy to the company's regional office within twenty days. "Otherwise, the company will reclassify and/or terminate the policy ... depending upon the circumstances." The exclusion's "effective date" was stated as July 15, 2004.

At the bottom right side of the Named Driver Exclusion Endorsement, Mother's insurance agent Ware signed his name above a single line that crossed the width of the page. Below the line, the names "American Family Mutual Insurance Company" and "American Standard Insurance Company of Wisconsin Madison, Wisconsin" were printed on the left side of the signature page. The names "American Family Insurance Company" and "American Standard Insurance Company of Ohio" were printed on the right side of the signature page.

Upon receiving a signed copy of the Named Driver Exclusion from Franklin, Mother signed and dated the Named Driver Exclusion Endorsement on August 14, 2004. Mother mailed the Named Driver Exclusion Endorsement back to Franklin, and Franklin mailed a copy of the Named Driver Exclusion Endorsement to the insurer, American Family, on August 19, 2004.

During August 2004, American Family sent Mother a declaration sheet dated July 15, 2004–September 2, 2004. The declaration sheet identified the Named Driver Exclusion as a provision of the policy. As a result of a different policy change, a multi-vehicle discount, American Family later sent Mother a second declaration

sheet, which was dated September 2, 2004–September 2, 2004. According to American Family, Mother would not have received a declaration sheet setting forth the effective dates of the renewal period of the policy, September 2, 2004–March 2, 2005, because American Family does not mail declarations out for every renewal. American Family stated that once the driver exclusion and multiple vehicle changes were made to the policy, such changes continued as the terms of the Insurance Policy, which was renewed by Mother upon payment of her premium invoices.

Mother received no other policy documents from American Family until her policy was cancelled. American Family, however, did send Mother billing statements with "notice dates" of August 6, 2004, September 7, 2004, October 6, 2004, and November 8, 2004. The August 6, 2004 bill reflected an additional charge of $279.30 for the 2001 Chevrolet Driver/Use Change from July 15, 2004, to September 2, 2004, and an additional charge of $1,586.10 for the 2001 Chevrolet Renewal for September 2, 2004, to March 2, 2005. The following month, the September bill reflected a deletion of the $279.30 for the 2001 Chevrolet Driver/Use Change from July 15, 2004, to September 2, 2004, and a deletion of $1,070.10 for the 2001 Chevrolet Renewal Driver/Use Change for September 2, 2004, to March 2, 2005. Additionally, the September bill reflected a discount of $78.50 for the 2001 Chevrolet Renewal from September 2, 2004, to March 2, 2005. The remaining bills for October and November merely showed the account balance and the payments received for those months. Mother paid the installments due on the premium on August 27, 2004, September 27, 2004, and October 30, 2004. On the bottom of each bill read, "See policy for coverage information."

On December 6, 2004, Driver and Passenger were involved in a motor vehicle collision in which Driver was driving the 2001 Chevrolet Cavalier. The accident resulted in a lawsuit filed for Passenger by her Next Friend Jacqueline Midgett, which sought to recover money damages from Driver for his negligence contributing to cause the accident, and from American Family.

On November 9, 2007, American Family filed its Petition for Declaratory Judgment against Appellants, requesting that the trial court resolve the controversy between the parties and declare that the Insurance Policy did not provide coverage for Driver for Passenger's injuries arising out of the December 6, 2004 accident because of the Named Driver Exclusion; that American Family has no obligation under any policy to defend Driver or pay any judgment against him arising out of the automobile accident; and that American Family has no obligation to provide uninsured motorist benefits to Passenger for her injuries sustained in the automobile accident.

On October 3, 2008, American Family filed its Motion for Summary Judgment and Statement of Uncontroverted Facts on its declaratory judgment action. Appellants responded to American Family's Statement of Uncontroverted Facts on October 24, 2008. The trial court granted American Family's Motion for Summary Judgment on December 19, 2008, concluding that the Named Driver Exclusion provision of the Insurance Policy issued to Mother precluded liability coverage for the negligence of Driver on December 6, 2004; American Family had and has no obligation under any policy to defend Driver or any other person for Driver's accident on December 6, 2004; and American Family has no obligation to provide uninsured motorist benefits to Passenger in the accident on December 6, 2004.

Appellants filed their notice of appeal on January 20, 2009, from which this appeal follows.

## Points on Appeal

Appellants raise two points on appeal. In their first point, Appellants allege the trial court erred granting American Family's Motion for Summary Judgment due to an ambiguity in the insurance policy resulting from the declaration sheets issued by American Family that limited the Named Driver Exclusion to a time period prior to the occurrence at issue in this suit.

In their second point on appeal, Appellants allege that the trial court erred in granting American Family's Motion for Summary Judgment due to an ambiguity in the insurance policy resulting from the fact that the Named Driver Exclusion was not issued by the same company that issued the policy, in violation of the policy.

## Standard of Review

The standard of review for an appeal from summary judgment is essentially *de novo*. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment will be upheld on appeal if there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. *Id.* Summary judgment is particularly appropriate when construction of a contract is at issue and the contract is unambiguous on its face. *Lupo v. Shelter Mut. Ins. Co.*, 70 S.W.3d 16, 18–19 (Mo.App. E.D.2002).

## Discussion

The appeal before us presents no disputed issue of material fact. Appellants' first point on appeal focuses on an alleged ambiguity stemming from the declaration sheets, which Appellants argue limits the Named Driver Exclusion to a time period prior to the occurrence at issue in this suit. Thus, Appellants contend that there exists a genuine issue as to who was covered under the Insurance Policy and what information American Family gave its policyholders.

In construing Mother's Insurance Policy and its Named Driver Exclusion, we must keep in mind that insurance policies are contracts; thus, the rules of contract construction apply. *Lupo*, 70 S.W.3d at 19. The words of a policy are given their ordinary meaning unless it is obvious that a technical meaning was intended. *Krombach v. Mayflower Ins. Co. Ltd.*, 785 S.W.2d 728, 731 (Mo.App. E.D. 1990). Courts cannot create an ambiguity to enforce a particular construction. *Rodriguez v. Gen. Accident Ins. Co. of Am.*, 808 S.W.2d 379, 382 (Mo. banc 1991). Moreover, where no ambiguity exists in the contract, the court enforces the policy as written. *Peters v. Employers Mut. Cas. Co.*, 853 S.W.2d 300, 302 (Mo. banc 1993).

The issue of whether a contract is ambiguous is a question of law. *Id.* The Missouri test for ambiguity is clear. The policy must be read as a whole to determine the parties' intent. *Oak River Ins. Co. v. Truitt*, 390 F.3d 554, 557 (8th Cir. 2004), *citing Kyte v. Am. Family Mut. Ins. Co.*, 92 S.W.3d 295, 298–99 (Mo.App. W.D.2002). A contract is ambiguous only if reasonable people may fairly and honestly differ in their construction of the terms because the terms are susceptible to more than one meaning. *Lupo*, 70 S.W.3d at 19. A contract is not ambiguous merely because the parties disagree over its meaning. *Id.* Evidence of how the contract was understood or acted upon by the parties is only used when the contract or a contract term is unclear. *Nickles v. Auntie Margaret Daycare Corp.*, 829 S.W.2d 614, 616 (Mo.App. E.D.1992).

Ambiguous language is construed against the insurer. *Peters,* 853 S.W.2d at 302. Likewise, so is limiting language. *Chase Resorts, Inc. v. Safety Mut. Cas. Corp.,* 869 S.W.2d 145, 150 (Mo. App. E.D.1993). If an ambiguity exists, the policy language will be interpreted as understood by the lay person who purchased it. *Oak River Ins. Co.,* 390 F.3d at 558. Courts should not adopt an interpretation neutralizing a policy provision if another interpretation gives it effect. *Id.*

Appellants argue that the Insurance Policy is ambiguous because it has two reasonable meanings, one of which is that the Named Driver Exclusion was effective only through September 2, 2004. Thus, Appellants contend that the exclusion somehow expired and Driver was covered under the Insurance Policy at the time of the accident. We disagree.

The plain and unambiguous terms of the Insurance Policy state that Driver was excluded from coverage when the accident occurred. The Named Driver Exclusion Endorsement signed by Mother and the insurance agent states that the Insurance Policy does not apply when Driver operates the vehicle. Section 303.190.2(3), RSMo 2000,[1] specifically allows insurance policies to exclude coverage for damages arising out of the use of a motor vehicle by a specifically excluded driver, such as the endorsement here did to exclude coverage for damages arising out of Driver's use of Mother's motor vehicle.

The Named Driver Exclusion Endorsement designates an effective date as July 15, 2004. Importantly, the Named Driver Exclusion Endorsement does not limit its effectiveness to an ending date. The Named Driver Exclusion Endorsement also states that "[a]ll other terms, agreements, conditions, and provisions remain unchanged," and thus the exclusion merges with the Insurance Policy in place by its unambiguous terms. Moreover, without the signing of such endorsement, American Family noted that it would "reclassify and/or terminate the policy."

Appellants erroneously argue that Missouri statutes, specifically Section 303.190.4, require a declarations page be sent to a policyholder that includes the limits of the policy and the time period for which the policy applies. Section 303.190.4, however, provides:

4. Such motor vehicle liability policy shall state the name and address of the named insured, the coverage afforded by the policy, the premium charged therefor, the policy period and the limits of liability, and shall contain an agreement or be endorsed that insurance is provided thereunder in accordance with the coverage defined in this chapter as respects bodily injury and death or property damage, or both, and is subject to all the provisions of this chapter.

This statute does not require the information be sent to the policyholder through a specific document such as a declarations page, nor does this statute permit the court to ignore policy construction rules requiring a policy to be read as a whole based on its clear and unambiguous language. Section 303.190.4.

The declarations page sent to Mother not only reflects the policy's coverage and deductibles, but it also reflects the Named Driver Exclusion Endorsement, and it provides an effective date from July 15, 2004, to September 2, 2004. The second declarations page is similar to the first, but also reflects the multi-car discount change that was made to Mother's policy, and provides an effective date of September 2, 2004, to September 2, 2004. We

---

**1.** All subsequent statutory citations are to RSMo 2000, unless otherwise indicated.

note that looking to the terms of the Insurance Policy, we find that the policy "may be continued for successive policy periods by the payment of the required premium ..." Additionally, upon payment of the premium, the policy would continue without change under the stated language, "This policy and the declarations include all the agreements between you and us relating to this insurance. No change or waiver may be effected in this policy except by endorsement issued by us."

Critical to our decision is the fact that the Insurance Policy's expiration/renewal date was September 2, 2004, and that Mother continued to pay the premiums even after such date. Thus, we find that Mother's Insurance Policy included the Named Driver Exclusion from the time Mother signed the endorsement. The Named Driver Exclusion has an effective date of July 15, 2004, and continued until the time American Family or Mother made a change or cancelled the policy. No evidence of any change eliminating the Named Driver Exclusion Endorsement is present on the record.

██ Even if we were to find an ambiguity in the terms of the policy by focusing on the dates of the declarations page rather than the effective date on the Named Driver Exclusion Endorsement, we would nevertheless find that the Insurance Policy excluded Driver from coverage at the time of his accident. In seeking to resolve the ambiguity, we would look to extrinsic evidence, including the fact that Mother signed the exclusion for the express purpose of lowering her insurance premiums. American Family then sent her bills reflecting the lowered premium, and Mother paid the lower premium. We would also look to the record for evidence demonstrating that American Family does not send new declarations pages upon each policy renewal. Appellants provided no

affidavits, depositions, answers to interrogatories, or admissions in the record to demonstrate otherwise. *See Larabee v. Eichler*, 271 S.W.3d 542, 545–46 (Mo. banc 2008). At no time did Mother's Insurance Policy rates change, nor did Mother receive any other notification of a change in her policy. Both Mother's intent and American Family's intent was to exclude Driver from the Insurance Policy coverage in order to give Mother a lower insurance rate. Even in light of our rules of construction to view ambiguous language against the insurer, we cannot find in favor of Mother under these circumstances. Once the Named Policy Exclusion Endorsement was in effect, it remained in effect until it was cancelled.

██ Appellants' second point on appeal is also without merit. The Named Driver Exclusion Endorsement is not ambiguous as to which company issued the endorsement by virtue of the location of the signatures on the endorsement. The four different companies listed at the bottom of the endorsement page have a solid, continuous line above them, separating everything above the line from everything below it and indicating the companies fall within the footer of the page.

██ When policies are construed, courts attempt to permit both typed and printed provisions to stand. *Ranger Ins. Co. v. Silverthorn*, 553 S.W.2d 530, 533 (Mo.App.1977). However, if there is a conflict between typed and printed provisions, the typed provisions prevail. *Id.* Here the Named Driver Exclusion Endorsement included typed provisions on the printed endorsement form. The typed provisions include the Insurance Policy number, which is the same number included on Mother's declarations pages, and the effective date of July 15, 2004. The four pre-printed names of insurance companies listed in the footer of the page are pre-

printed and thus do not prevail in construing a written insurance policy.

Additionally, Mother's declarations page and policy booklet both reflect the Insurance Policy was issued by American Family *Mutual* Insurance Company, and no other company. Mother knew that American Family *Mutual* Insurance Company issued her endorsement because her agent, Ware, who was an agent for American Family *Mutual* Insurance Company, was the agent who wrote the original policy and the agent who signed the endorsement in question. Furthermore, Appellants presented no evidence to show otherwise. Reasonable persons should not differ in their interpretation as to which company issued the Named Driver Exclusion Endorsement.

Because Driver was excluded from the Insurance Policy, American Family had no obligation to provide coverage for Driver or any liability arising out of his December 6, 2004 accident. American Family was properly awarded summary judgment in its declaratory judgment action.

### Conclusion

The judgment of the trial court is affirmed.

GEORGE W. DRAPER III, and ROY L. RICHTER, JJ., Concur.