In the Missouri Court of Appeals
 Eastern District
 DIVISION THREE

JESSICA STACY AND BRIAN STACY, ) No. ED108576
 )
 Respondents, ) Appeal from the Circuit Court
 ) of St. Louis County
vs. )
 ) Honorable Nancy Watkins
THE BAR PLAN MUTUAL INSURANCE ) McLaughlin
COMPANY, )
 )
 Appellant. ) FILED: January 26, 2021

 Introduction

 This appeal presents issues relating to the enforcement of a judgment entered following a

settlement agreement executed between an attorney and his malpractice victims pursuant to

Section 537.0651 against the attorney’s insurance carrier in an equitable garnishment action.

Here, the trial court granted summary judgment to Jessica Stacy (“Mrs. Stacy”) and Brian Stacy

(“Mr. Stacy”) (collectively, the “Stacys”) on their equitable-garnishment action against The Bar

Plan Mutual Insurance Company (“The Bar Plan”). The grant of summary judgment allowed the

Stacys to collect from The Bar Plan on the judgment entered in the underlying legal malpractice

claim the Stacys brought against their attorney, Jeffrey Witt (“Witt”). Witt carried a policy of

professional liability insurance (the “Policy”) with The Bar Plan. The Bar Plan raises four points

on appeal challenging the trial court’s judgment finding that The Bar Plan breached the Policy

1
 All Section references are to RSMo (2016), unless otherwise noted.
and is liable for the Stacys’ underlying judgment against Witt pursuant to a Section 537.065

settlement agreement (the “Section 537 Agreement”).

 In Point One, The Bar Plan challenges the trial court’s finding that the Stacys’ demands

against Witt constituted multiple claims under the Policy, thereby allowing a multiple-limit

recovery under the Policy. The Bar Plan reasons that the limits-of-liability provision of the

Policy (the “Limits of Liability”) clearly reads that two or more demands arising out of a series

of related acts or omissions shall be treated as a single claim, thereby limiting the Stacys’

maximum recovery under the Policy to a single claim. Relatedly, Point Two argues the trial

court erred in finding The Bar Plan breached the Policy when it informed the Stacys of its

position that the Stacys’ legal malpractice claims against their attorney constituted a single claim

under the Limits of Liability in the Policy. Point Three alleges the trial court erred in finding

The Bar Plan was bound by the underlying judgment because The Bar Plan’s alleged breach of

the Policy had no effect on Witt’s defense of the malpractice action. In particular, The Bar Plan

suggests that because the Stacys were willing to settle all of their claims against Witt within the

Limits of Liability for a single claim, The Bar Plan’s single-claim position did not factor into

Witt’s decision to settle with the Stacys. Lastly, Point Four claims insufficient evidence supports

the trial court’s judgment holding The Bar Plan liable for the full $450,000 of the underlying

judgment because the amount of allowable coverage under the Policy was reduced by defense

expenses that were not reflected in the record.

 Because the word “related” in the Limits of Liability is unambiguous, a reasonable

attorney would understand that multiple acts of negligence committed in the course of

representing the Stacys in their personal injury claims arising from a single motor vehicle

accident are “a series of related acts or omissions” so as to constitute a single claim under the

 2
Policy. The trial court erred in finding multiple coverage limits applied to each of the Stacys’

demands against Witt. Correspondingly, the summary-judgment record establishes that The Bar

Plan did not unjustifiably refuse to provide coverage to Witt when it informed Witt that it

considered the Stacys’ malpractice claims to be a single claim under the Limits of Liability.

Accordingly, the trial court erred in granting summary judgment to the Stacys. Furthermore,

because Witt’s execution of the Section 537 Agreement with the Stacys without The Bar Plan’s

consent prevented The Bar Plan from controlling the litigation, The Bar Plan is not bound by the

underlying judgment entered against Witt. The Bar Plan is therefore entitled to summary

judgment in its favor in the equitable garnishment action brought against it by the Stacys.

Because Points Three and Four are resolved by the holdings in Points One and Two, we deny

Points Three and Four. We reverse the judgment of the trial court and enter summary judgment

in favor of The Bar Plan, pursuant to Rule 84.14.2

 Factual and Procedural History

 The Stacys were involved in a motor vehicle accident in November 2007. The Stacys

signed separate representation agreements to retain Witt and the Law Office of Jeffrey M. Witt,

LLC to represent them in pursuing personal injury claims against the driver of the other

automobile. Unknown to the Stacys, the “attorney” assigned to represent them, Bernard Becton,

had been disbarred following convictions for forgery and stealing. Witt was disbarred in 2014.

 On June 9, 2011, the Stacys filed a legal malpractice action against Witt and his law

office in which they alleged multiple acts of negligence in Witt’s representation of them in the

personal injury lawsuit. Witt carried a policy of professional liability insurance with The Bar

Plan. The Policy, issued April 2011, provides coverage in the amount of $500,000 per claim and

2
 All Rule references are to Mo. R. Civ. P. (2020), unless otherwise noted.

 3
$1,500,000 in the aggregate. The Policy includes the following Limits of Liability applicable to

multiple insureds, claims, and claimants:

 The demand for money or services by more than one person or Entity shall not
 operate to increase the Company’s liability. Two or more demands arising out
 of a single act or omission or a series of related acts or omissions shall be
 treated as a single Claim . . . .
 All such demands for money or services shall be considered a single Claim subject
 to a single Limit of Liability, regardless of the number of Insureds against which
 the demands are made.

(Emphasis added). The Policy thereafter provides a “non-exhaustive list of a series of related

acts or omissions that constitute a single [c]laim” in which the Limits of Liability of $500,000

for a single claim applies:

 a. All activities pertaining to handling a probate estate from its inception to its
 conclusion, including but not limited to, the advice and preparation of tax
 returns for the decedent or the estate;
 b. All activities, including but not limited to, settlement negotiations,
 discovery, trial and appeal, conducted on behalf of an injured client
 pertaining to all possible Claims and theories of recovery against all
 possible parties arising out of injury or loss to that client;
 c. All activities pertaining to the defense of a client in a civil case including
 but not limited to, settlement negotiations, discovery, trial and appeal;
 d. All activities pertaining to the defense of a criminal case, including but not
 limited to, plea bargaining, discovery, trial, sentencing, and appeal;
 e. All activities pertaining to a real estate transaction . . . ; and
 f. All activities pertaining to a sale of a business . . . .

 The Policy also contains a provision requiring the insured cooperate with the defense (the

“Cooperation Clause”), stating:

 Each Insured shall cooperate with the Company . . . . The Insured shall not make
 any payment, admit any liability, settle any Claims, assume any obligation or incur
 any expense without the consent of the Company. If our Insured does elect to
 admit liability, settle a Claim, assume any obligation or incur any expense
 without the consent of the Company it does so at its own cost and waives
 coverage for that Claim and any related act or omission.

(Emphasis added).

 4
 The Bar Plan agreed to provide Witt a defense to the Stacys’ malpractice action and

appointed Brent Baldwin (“Baldwin”) to represent him. The Stacys initially offered to settle

their claims for $500,000 each. The Bar Plan sent Witt reservation of rights letters, one of which

reserved its right to disclaim coverage for any of Witt’s acts or omissions giving rise to the

malpractice alleged in the Stacys’ petition that took place prior to the retroactive date of the

policy. The dates-of-coverage issue was later resolved in favor of coverage. The Bar Plan did

not send any letters reserving its rights to disclaim coverage or refuse to indemnify Witt related

to taking a single-claim position as to the Limits of Liability.

 In correspondence between The Bar Plan and Baldwin, a corporate representative of The

Bar Plan noted that the Stacys’ demands exceeded the policy limit for a single claim. On April

25, 2013, Baldwin informed The Bar Plan that the Stacys likely were thinking they had two

claims against Witt and thus thought the policy provided two separate limits, one limit for each

of their claims.

 Trial was scheduled for October 7, 2013. Approximately three weeks prior, the parties

engaged in an unsuccessful mediation on September 13, 2013. During the mediation, The Bar

Plan explained its view that the Stacys’ demands against Witt constituted only a single claim

under the Policy’s Limits of Liability.

 The summary-judgment record reveals that after the unsuccessful mediation, Witt

retained attorney Laurence D. Mass (“Mass”) to represent his personal interests. Shortly

thereafter, Mass emailed Baldwin requesting that Baldwin terminate his representation of Witt.

Mass later presented a settlement offer on behalf of Witt, offering to settle the Stacys’ claims for

$400,000. The Bar Plan rejected the demand.

 5
 Witt then entered into a Section 537 Agreement with the Stacys on September 23, 2013.

The Section 537 Agreement stated that any judgment the Stacys obtained against Witt based on

the facts in their first amended petition would be satisfied solely from the proceeds of Witt’s

Policy with The Bar Plan, thereby limiting collection of any judgment against Witt to that which

could be recovered from The Bar Plan. Witt entered into the Section 537 Agreement with the

Stacys without The Bar Plan’s consent.

 The malpractice action proceeded to a bench trial on October 9, 2013. Witt did not

appear at trial to defend against the Stacys’ allegations. The trial court entered judgment in favor

of the Stacys and against Witt and his law office. The trial court found that Witt and his office

were jointly and severally liable for multiple acts of malpractice, including failure to adequately

investigate the amount the Stacys could recover, negligent hiring and retention of a disbarred

attorney, and overall failure to competently and adequately represent the Stacys. The trial court

awarded Mrs. Stacy $400,000 in actual damages and $444,445 in punitive damages; the trial

court awarded Mr. Stacy $50,000 in actual damages and $55,555 in punitive damages. The total

award exceeded the $500,000 amount available for a single claim under the Policy’s Limits of

Liability.

 Following the trial court’s judgment in the underlying malpractice action, the Stacys filed

the present equitable-garnishment claim under Section 379.200 to collect on the judgment

entered against Witt from The Bar Plan. In its pleadings, The Bar Plan raised affirmative

defenses, including Witt’s unilateral rejection of The Bar Plan’s defense without just cause or

excuse, which breached the Policy’s Cooperation Clause and released The Bar Plan from any

liability for the underlying judgment entered against Witt in the malpractice lawsuit.

 6
 Prior to the motions giving rise to this appeal, the Stacys moved for summary judgment

against The Bar Plan, which the trial court denied.3 The Stacys appealed the denial of summary

judgment, and this Court dismissed the appeal for lack of a final judgment. See Stacy v. Bar

Plan Mut. Ins. Co., 522 S.W.3d 914, 919 (Mo. App. E.D. 2017).

 Subsequently, The Bar Plan moved for summary judgment, and the Stacys cross-moved

for summary judgment. The trial court entered its final judgment on November 18, 2019,

granting summary judgment to the Stacys. In finding for the Stacys, the trial court found the

term “related” in the Limits of Liability to be ambiguous, and thus interpreted the Policy in favor

of coverage for two separate claims. Consequently, the trial court found that The Bar Plan

breached the Policy by refusing to provide coverage and indemnity on both of the Stacys’ claims

against Witt when it communicated its single-claim position under the Limits of Liability only

three weeks before trial. The trial court held that Witt was not precluded from entering into the

Section 537 Agreement with the Stacys due to The Bar Plan’s breach of the Policy, and that The

Bar Plan was required to pay $450,000 on the underlying malpractice judgment.4 The Bar Plan

now appeals.

 Points on Appeal

 The Bar Plan raises four points on appeal. Point One argues the trial court erred in

finding The Bar Plan breached the Policy and therefore is bound by the underlying judgment

entered against Witt. In particular, The Bar Plan argues the Stacys’ demands against Witt

presented only a single claim under the Policy’s Limits of Liability because the claim arose out

of a series of related acts or omissions constituting Witt’s malpractice in representing the Stacys.

3
 In that judgment, the trial court found the Policy was not ambiguous and The Bar Plan did not waive nor was
estopped from asserting its position that Stacys’ malpractice action against Witt constituted a single claim under the
Policy’s Limits of Liability.
4
 Punitive damages were excluded from recovery.

 7
Point Two contends the trial court erred in holding The Bar Plan breached the Policy when it

communicated to Witt its position that the Stacys’ malpractice allegations against Witt

constituted a single claim subject to the single-claim liability limit because an insurer has no duty

to communicate a policy’s limits of liability, and doing so is not a denial of coverage or a breach

of the Policy.

 Point Three maintains the trial court erred in holding The Bar Plan is bound by the

underlying judgment because The Bar Plan’s single-claim position was not a material breach of

the Policy in that it had no effect on the litigation. The Bar Plan argues that the summary-

judgment evidence shows that the Stacys were willing to settle within the single-claim limit.

Therefore, whether the malpractice action filed against Witt by the Stacys was properly deemed

a single-claim or multiple claims under the Limits of Liability was not a factor in Witt’s decision

to enter into the Section 537 Agreement. Point Four asserts the trial court erred in entering

judgment against The Bar Plan in the amount of $450,000 because no summary-judgment

evidence supports finding that coverage in the amount of $450,000 remained under the Policy

because the Limits of Liability was reduced by defense expenses not reflected in the summary-

judgment record.

 Standard of Review

 A trial court’s grant of summary judgment and the interpretation of an insurance policy

both present questions of law, which we review de novo. Taylor v. Bar Plan Mut. Ins. Co., 457

S.W.3d 340, 344 (Mo. banc 2015) (internal citations omitted); John Patty, D.O., LLC v. Mo.

Prof’ls Mut. Physicians Prof’l Indem. Ass’n, 572 S.W.3d 581, 587–88 (Mo. App. E.D. 2019)

(internal citations omitted). “The trial court makes its decision to grant summary judgment

based on the pleadings, record submitted, and the law; therefore, this Court need not defer to the

trial court’s determination[.]” Green v. Fotoohighiam, 606 S.W.3d 113, 115 (Mo. banc 2020)

 8
(quoting Goerlitz v. City of Maryville, 333 S.W.3d 450, 452 (Mo. banc 2011)); Taylor, 457

S.W.3d at 344; Patty, 572 S.W.3d at 588.

 To be entitled to summary judgment as a matter of law, the moving party must establish

there is no genuine issue of material fact. Green, 606 S.W.3d at 115 (citing Goerlitz, 333 S.W.3d

at 452). We review the summary-judgment record “in the light most favorable to the party

against whom summary judgment was entered, and that party is entitled to the benefit of all

reasonable inferences from the record.” Id. at 116 (quoting Goerlitz, 333 S.W.3d at 453).

“However, facts contained in affidavits or otherwise in support of the party’s motion are

accepted as true unless contradicted by the non-moving party’s response to the summary[-

]judgment motion[,]” and denials must be supported “with specific references to discovery,

exhibits, or affidavits” pursuant to Rule 74.04(c). Id. (internal quotations omitted).

 Discussion

I. Point One––Related Acts or Omissions are Unambiguously Defined as a Single
 Claim under the Policy’s Limits of Liability

 Two issues are central to this appeal: (1) whether the Stacys’ demands against Witt

constituted a single claim under the terms of the Policy, and (2) whether The Bar Plan breached

the Policy when it treated the Stacys’ allegations of malpractice as a single claim under the

Limits of Liability. The Stacys maintain The Bar Plan unjustifiably denied coverage and

breached the Policy when it first informed the Stacys only three weeks before trial that the

Stacys’ demands were subject to the limits of liability for only a single claim. Specifically, the

Stacys argue The Bar Plan was estopped from denying coverage for both of their claims because

The Bar Plan did not send Witt a reservation of rights or denial of coverage letter informing Witt

of its single-claim position. The Bar Plan acknowledges that an insurer must communicate to the

insured if it intends to reserve its rights to deny coverage. But The Bar Plan maintains that

 9
merely affirming the limits of liability expressed in the policy is not a denial of coverage. The

Bar Plan emphasizes the absence of any judicial authority imposing an affirmative duty on an

insurer to inform the insured of its position as to limits of liability that are clearly expressed in an

insurance policy. In particular, The Bar Plan asserts it did not breach the Policy when it told the

Stacys of its single-claim position as to the applicable limits of liability or by not expressing that

position earlier in a letter reserving its rights or denying coverage.

 We first address the issue of ambiguity. The Bar Plan argues the trial court erred as a

matter of law in (1) holding the Policy’s Limits of Liability to be ambiguous, and (2) finding that

the Stacys’ demands against Witt constituted two separate claims under the Policy rather than a

single claim arising out of a series of related acts or omissions of legal malpractice as defined in

the Policy.

 The Policy provides the following Limits of Liability:

 The demand for money or services by more than one person or Entity shall not
 operate to increase the Company’s liability. Two or more demands arising out
 of a single act or omission or a series of related acts or omissions shall be
 treated as a single Claim.

(Emphasis added). In their motion for summary judgment, the Stacys posit that the word

“related” as used in the Limits of Liability is ambiguous, and thus coverage must be extended in

favor of applying separate limits of liability to each of the Stacys’ malpractice claims against

Witt––specifically, coverage up to $500,000 for Mrs. Stacy’s claim and coverage up to $500,000

for Mr. Stacy’s claim.

 We interpret insurance policies under the general rules of contract construction and thus

give insurance policy language its plain and ordinary meaning. Taylor, 457 S.W.3d at 344

(internal citation omitted); Bar Plan Mut. Ins. Co. v. Chesterfield Mgmt. Assocs., 407 S.W.3d

621, 628 (Mo. App. E.D. 2013) (citing Am. Family Mut. Ins. Co. v. St. Clair, 295 S.W.3d 586,

 10
591 (Mo. App. E.D. 2009)). Because “[t]he only possible purchaser of a legal malpractice

insurance policy . . . is an attorney[,] . . . a legal malpractice insurance policy is given the

meaning that would be attached by a reasonable attorney purchasing the policy.” Taylor, 457

S.W.3d at 344.

 When the policy’s language is clear and unambiguous, we will enforce the policy as

written and “will not resort to canons of construction.” Id. (citing Allen v. Cont’l W. Ins. Co.,

436 S.W.3d 548, 554 (Mo. banc 2014)). When the policy language is ambiguous, we will

construe the policy language against the insurer and in favor of coverage. Chesterfield, 407

S.W.3d at 628 (internal citation omitted). Whether a contract is ambiguous is a question of law.

Id. “A contract is not ambiguous simply because the parties disagree over its meaning.” Id.

Rather, “ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of

the language in the policy.” Taylor, 457 S.W.3d at 344 (internal citation omitted). In analyzing

whether the language of an insurance policy is ambiguous, we must look at the policy as a whole

and “should not choose an interpretation neutralizing a policy provision if another interpretation

gives it effect.” Chesterfield, 407 S.W.3d at 628 (internal citation omitted). Further, we “may

not create an ambiguity . . . to distort policy language and enforce a construction [we] feel[] is

more appropriate.” Taylor, 457 S.W.3d at 344 (internal citation omitted).

 Here, we are persuaded that the term “related” as used in the Policy is unambiguous. The

dictionary defines “related” as “having relationship: connected by reason of an established or

discoverable relation.” WEBSTER’S THIRD NEW INT’L DICTIONARY OF THE ENGLISH LANGUAGE

UNABRIDGED 1916 (2002). The self-evident breadth of the term “related” does not establish

ambiguity. See Chesterfield, 407 S.W.3d at 629 (as quoted in Taylor, 457 S.W.3d at 346)

(“Multiple or broad meanings do not necessarily create ambiguity . . . [as] there is often a

 11
deliberate purpose in using a word with a broad meaning or multiple meanings in a contract,

namely to achieve a broad purpose.”). In Chesterfield, we examined a similar assertion of

ambiguity in the term “related” in a nearly identical provision for multiple insured, claims, and

claimants under a professional liability insurance policy offered by The Bar Plan:

 The demand for money or services by more than one person or Entity shall not
 operate to increase the Company’s liability. Two or more demands arising out
 of a single act or omission or a series of related acts or omissions shall be
 treated as a single Claim. . . . All such demands shall be considered a single Claim
 subject to a single Limit of Liability, regardless of the number of Insureds against
 which the demands are made.

Chesterfield, 407 S.W.3d at 625 (emphasis added). Chesterfield found no ambiguity in the term

“related” in the policy and agreed with other jurisdictions that “‘related’ is a word used

commonly with a broad meaning that includes a myriad of relationships, and is sufficiently broad

to encompass both logical as well as causal relationships.” Id. at 629 (quoting Bay Cities Paving

& Grading, Inc. v. Lawyers’ Mut. Ins. Co., 855 P.2d 1263, 1271 (Cal. 1993)). Simultaneously,

the term “related” is not impermissibly over-broad, because it has a natural limit to the extent

that it does “not cover every conceivable logical relationship because ‘at some point, a

relationship between two claims might be so attenuated or unusual that an objectively reasonable

insured could not have expected they would be treated as a single claim.’” Id. (quoting Bay

Cities, 855 P.2d at 1275).

 The Bar Plan argues that the term “related” as used in the Limits of Liability is not

ambiguous and offers numerous authorities demonstrating broad cross-jurisdictional agreement

that policy language concerning “a series of related acts or omissions” is unambiguous and

enforceable. See, e.g., Kilcher v. Cont’l Cas. Co., 747 F.3d 983, 990 (8th Cir. 2014) (applying

Minnesota law) (finding no ambiguity in a policy stating that “more than one [c]laim involving

the same [w]rongful [a]ct or [i]nterrelated [w]rongful [a]cts shall be considered as one claim”

 12
and applying the single-claim limit to separate sales of financial products to four unrelated

plaintiffs in an effort to avoid “micro-distinguishing . . . [that] would subvert[] the purpose of the

phrase ‘series of related acts’” (internal quotation omitted)); Gregory v. Home Ins. Co., 876 F.2d

602, 604 (7th Cir. 1989) (applying Indiana law) (finding no ambiguity in a policy stating that

“[t]wo or more claims arising out of . . . a series of related acts, errors, omissions or personal

injuries shall be treated as a single claim” and applying the single-claim limit to multiple clients

bringing various class-action claims against an attorney for negligent tax advice); Liberty Ins.

Underwriters, Inc. v. Davies Lemmis Raphaely Law Corp., 162 F. Supp. 3d 1068, 1070 (C.D.

Cal. 2016) (finding no ambiguity in a policy stating that claims “arising out of or attributable to

the same or related wrongful acts shall be treated as a single claim” and applying the single-

claim limit to seven clients bringing separate actions against a law firm for running a fraudulent

investment scheme), aff’d, 708 F. App’x 374 (9th Cir. 2017); Camico Mut. Ins. Co. v.

Rogozinski, No. 3:10-CV-762-J-32MCR, 2012 WL 4052090, at *6–7 (M.D. Fla. Sept. 13, 2012)

(finding no ambiguity in a policy stating that a single claim also includes multiple demands

arising out of a multiple acts, errors, or omissions, whether such demands are made by one or

more persons, and applying the single-claim limit to two clients who brought malpractice actions

against an attorney even where the attorney breached separate duties to each), aff’d, 530 F.

App’x 910 (11th Cir. 2013).

 To advance their argument that the Stacys were separate clients of Witt and are entitled to

separate coverage limits under the Policy, the Stacys rely almost exclusively on one federal

district court case involving a declaratory judgment action brought to determine the applicable

limits of liability in an attorney-malpractice action. Scott v. Am. Nat’l Fire Ins. Co., 216 F.

Supp. 2d 689 (N.D. Ohio 2002). We find Scott inapplicable for the following reasons. In Scott,

 13
three separate parties filed malpractice actions against an attorney alleging negligence in the

attorney’s creation of a corporation formed to manufacture and market golf equipment and

apparel. The three affected parties filed malpractice actions detailing how the attorney breached

different duties to each of them through several different transactions with each breach resulting

in different harms. Id. at 692. In determining whether the three parties’ claims should be treated

as a single claim under the policy’s limits of liability, Scott analyzed policy language similar to

that at issue here. Notably, Scott made no specific finding that the term “related” was

ambiguous. Id. at 693–95. But Scott also noted the absence of binding authority in the Sixth

Circuit interpreting the term “related” in an insurance contract. Id. at 694. Scott then reviewed

several jurisdictions’ approaches before reasoning that its case was “more analogous to those

cases that apply the separate duty and distinct harm approach. Using that approach, [the

attorney’s] malpractice actions are unrelated because [he] owed separate and distinct duties to

[the three clients].” Id. at 695. Unlike Scott, Missouri has existing judicial authority applying

the definition of “related” in an insurance contract. Equally instructive to this Court is that

Missouri case law is wholly consistent with what appears to be the majority of courts interpreting

the term “related” as used in provisions defining limits of liability in insurance contracts. See,

e.g., Chesterfield, 407 S.W.3d at 629.

 Here, as in Taylor and Chesterfield, the use of a broad term like “related” in the Policy

achieves the Limits of Liability’s purpose to restrict the liability of the insurer to that of a single

claim when multiple demands arise out of a series of related acts or omissions. See Taylor, 457

S.W.3d at 347; Chesterfield, 407 S.W.3d at 629. Given the breadth of the term “related,” an

attorney purchasing legal malpractice insurance would reasonably expect that distinct acts of

negligence in representing two individuals injured in the same motor vehicle accident against

 14
other motorists and insurance providers may constitute “a series of related acts or omissions[.]”

See Taylor, 457 S.W.3d at 346 (noting “the ultimate question is what a reasonable attorney

purchasing th[e] policy would expect to be covered and excluded from coverage”). Here, a trial

court determined that Witt committed various acts of negligence in representing the Stacys

following their motor vehicle accident, including failure to fully investigate the claims, negligent

hiring and supervision, and overall failure to competently represent the Stacys’ interests. See

Chesterfield, 407 S.W.3d at 629 (examining the relationships between the underlying legal

malpractice claims against the insured in order to determine whether the attorney’s negligent acts

in a real estate transaction were related so as to comprise a single claim under the policy). While

the underlying judgment differentiates between some of the harms suffered by the Stacys, such

as Witt’s negligent handling of Mr. Stacy’s loss of consortium claim, the summary-judgment

record clearly shows that the Stacys’ first amended petition alleging malpractice against Witt and

his office always referred to the Stacys jointly as Plaintiffs and made demands for “their”

damages, harms, and losses. In determining the extent of coverage for the underlying judgment

under the Policy, the Limits of Liability expressly provides that the number of claimants and

demands is not dispositive; rather, “[t]wo or more demands arising out of a single act or

omission or a series of related acts or omissions shall be treated as a single [c]laim” and “[t]he

demand for money or services by more than one person or [e]ntity shall not operate to increase . .

. liability.” We cannot ignore this language, which compels our holding that a reasonable

attorney purchasing the Policy would understand that various acts of malpractice committed

while representing a married couple following a single motor vehicle accident would be

characterized and treated as a series of logically or causally related acts or omissions constituting

a single claim under the Policy’s Limits of Liability. We are unwilling to sanction any divergent

 15
interpretation given the plain Policy language that “[t]wo or more demands arising out of a single

act or omission or a series of related acts or omissions shall be treated as a single [c]laim.” See

Taylor, 457 S.W.3d at 344. Further, a reasonable attorney in Witt’s position would anticipate the

possibility that even if his actions or omissions in representing the Stacys led to multiple

demands on The Bar Plan, those demands would not increase the available policy limits for a

single claim because the Policy states immediately preceding the “related” language that “[t]he

demand for money or services by more than one person or [e]ntity shall not operate to increase

[The Bar Plan’s] liability.” See id.

 As in Chesterfield, the Limits of Liability is followed by a non-exhaustive list of related

acts or omissions that constitute a single claim under the Policy for which a single limit of

liability will apply:

 a. All activities pertaining to handling a probate estate from its inception to its
 conclusion, including but not limited to, the advice and preparation of tax
 returns for the decedent or the estate;
 b. All activities, including but not limited to, settlement negotiations,
 discovery, trial and appeal, conducted on behalf of an injured client
 pertaining to all possible Claims and theories of recovery against all
 possible parties arising out of injury or loss to that client;
 c. All activities pertaining to the defense of a client in a civil case including
 but not limited to, settlement negotiations, discovery, trial and appeal;
 d. All activities pertaining to the defense of a criminal case, including but not
 limited to, plea bargaining, discovery, trial, sentencing, and appeal;
 e. All activities pertaining to a real estate transaction . . . ; and
 f. All activities pertaining to a sale of a business . . . .

(Emphasis added).

 The Stacys suggest that the use of the singular term “client” in the non-exhaustive list of

acts constituting a single claim compels an interpretation that an attorney’s representation of two

clients in a related matter involves two separate claims. At the very least the Stacys submit that

The Bar Plan’s use of the singular term “client” raises an uncertainty as to whether the Stacys’

 16
action against Witt constitutes a single claim or multiple claims under the Limits of Liability, and

that such uncertainty must be resolved in favor of multiple coverage for Stacys’ claims. We

disagree.

 We first note that the Limits of Liability is introduced by a heading that specifically

contextualizes the single-claim limit as pertaining to “multiple insureds, claims and

claimants”—all grammatical plurals. We are not persuaded that use of the singular term

“client” in a non-exhaustive list of examples gives rise to a reasonable inference that the Policy’s

single-claim limitation applies only to claims raised by an individual client against the insured.

Indeed, if The Bar Plan intended to narrowly define a single claim under the Policy as being

inclusive of only those claims brought against the insured attorney by a singular client, The Bar

Plan expressly could have so provided as in Patty. 572 S.W.3d at 588–89 (finding no ambiguity

with respect to related acts or omissions in a medical insurance policy but determining the issue

was controlled by express language in the policy limiting liability to “all related acts or

omissions in the furnishing of such services to any one person”) (emphasis added).

 Moreover, the interpretation proffered by the Stacys runs contrary to the general rule of

contract construction that every provision of the contract must be given effect. See Chesterfield,

407 S.W.3d at 628 (internal citation omitted); St. Clair, 295 S.W.3d at 592 (internal citation

omitted) (“Courts should not adopt an interpretation neutralizing a policy provision if another

interpretation gives it effect.”). To view the use of the singular “client” in a non-exhaustive list

of examples as a limitation to be applied throughout the Policy fails to give meaning to the very

Limits of Liability provision in dispute—which clearly and plainly states that demands by

multiple claimants may constitute a single claim under the Policy. See Chesterfield, 407

S.W.3d at 628 (internal citation omitted); St. Clair, 295 S.W.3d at 592 (internal citation omitted).

 17
Applying the single-client-single-claim interpretation advocated by the Stacys not only fails to

give effect to all Policy provisions, but would render the Limits of Liability provision

meaningless. Followed to its logical conclusion, the Stacys’ interpretation of the Limits of

Liability would require expanded multiple coverage whenever multiple clients made demands on

the insured. This interpretation would supersede and essentially void the express policy

language imposing a limitation of coverage in matters involving multiple insureds, claims, or

claimants. See Chesterfield, 407 S.W.3d at 628, 631 (internal citation omitted) (also cautioning

against interpretations encouraging claimants to split otherwise related claims in order to

artificially expand the policy limits); St. Clair, 295 S.W.3d at 592 (internal citation omitted).

 We acknowledge that the summary-judgment record supports the trial court’s finding that

the Stacys pursued their demands for equitable garnishment with a belief that they were seeking

recovery on two claims under Witt’s Policy. But the Stacys’ understanding of the limits of the

Policy is not determinative of this appeal because “[e]vidence of how the contract was

understood or acted upon by the parties is only used when the contract or a contract term is

unclear.” St. Clair, 295 S.W.3d at 591 (internal citation omitted). We are unwilling to accept the

Stacys’ characterization of a “single claim” given the express introductory language, which as

noted above contextualizes the single-claim limit as pertaining to “multiple insureds, claims

and claimants.” We do not find the Limits of Liability unclear. Mere disagreement over the

meaning of the terms of an insurance policy does not create ambiguity or require construing the

policy against the insurer. See Chesterfield, 407 S.W.3d at 628 (internal citation omitted).

Moreover, the ultimate question is not the reasonable expectation or understanding of the Stacys

but of Witt, the insured attorney, when he procured the insurance. See Taylor, 457 S.W.3d at

344.

 18
 Because the term “related” is not ambiguous, we reject the Stacys’ interpretation of the

Limits of Liability that their demands necessarily constitute two separate claims subject to two

separate limits under the Policy. See id. (internal citation omitted); Chesterfield, 407 S.W.3d at

628 (internal citation omitted). Rather, the plain language of the Limits of Liability indicates

that a reasonable attorney in Witt’s position would have known that his acts of legal malpractice

in representing the Stacys’ following their motor vehicle accident would constitute a single claim

arising out of a series of related acts or omissions for purposes of determining the applicable

limits of liability under the Policy. See Taylor, 457 S.W.3d at 344. Accordingly, we grant Point

One.

 II. Point Two––The Bar Plan Is Not Estopped from Asserting Limits of Liability

 Having determined the Policy’s Limits of Liability to be unambiguous, we next examine

whether The Bar Plan breached the Policy by not informing Witt earlier in the malpractice

litigation that it viewed the Stacys’ demands as limited to coverage for only a single claim. If

The Bar Plan breached its obligations under the Policy, Witt rightfully and lawfully entered into

the Section 537 Agreement with the Stacys without The Bar Plan’s consent and The Bar Plan is

now liable on the underlying malpractice judgment.

 In analyzing this point on appeal, it is imperative that we recognize the distinction in

Missouri law between defenses to coverage, which an insurer may be estopped from asserting,

and limits of liability, which cannot be waived. Martin v. U.S. Fid. & Guar. Co., 996 S.W.2d

506, 511 (Mo. banc 1999) (citation omitted); W. Heritage Ins. Co. v. Asphalt Wizards, 795 F.3d

832, 837 (8th Cir. 2015).

 An insurer’s duty to defend and indemnify the insured under a claims-made policy is an

issue of coverage that is subject to estoppel. See Advantage Bldgs. & Exteriors, Inc. v. Mid-

 19
Continent Cas. Co., 449 S.W.3d 16, 24 (Mo. App. W.D. 2014) (citing Kinnaman–Carson v.

Westport Ins. Corp., 283 S.W.3d 761, 765 (Mo. banc 2009)). “Under Missouri law, an insurance

company has a duty to defend an insured when the insured is exposed to potential liability to pay

based on the facts known at the outset of the case.” Id. at 22 (internal quotation and emphasis

omitted). The duty to defend potentially insured claims arises regardless of the probability of

liability, as “[c]overage is determined by comparing the policy with the allegations in the

pleadings.” Id. (internal citation omitted). “A liability insurer that assumes the defense of its

insured should promptly advise the insured of any grounds on which it appears that all or any

part of that asserted liability might not be covered.” Id. at 23 (internal citation omitted).5

 When an insurer fails to properly reserve its rights to disclaim coverage, said insurer may

be estopped from later denying coverage under the policy. See id. at 24. More simply stated: an

insurer must effectively inform the insured if the insurer believes it may not be required to

extend the coverage provided under the policy. “Defending an action with knowledge of non-

coverage under a policy of liability insurance without a proper and effective reservation of rights

in place will preclude the insurer from later denying liability due to non-coverage.” Id. (citing

Kinnaman–Carson, 283 S.W.3d at 765). In Advantage, the insurer sent letters to the insured

merely promising the insured would be “promptly advised” of the outcome of the insurer’s

“coverage analysis” without actually explaining what coverage issues might exist. Id. In

addition, the insurer did not promptly notify the insured of its position once it had concluded its

coverage analysis because it determined two days after sending the second letter that coverage

only existed for interior building damage but waited two years, just four days before trial, to

5
 We note from the parties’ briefs and the summary-judgment record before us that the Stacys do not assert The Bar
Plan breached its duty to defend Witt on the claims brought against him by the Stacys, but breached only its duty to
indemnify Witt by limiting coverage under the Policy to a single claim. Accordingly, we limit our review to The
Bar Plan’s conduct regarding its duty to indemnify and provide coverage.

 20
inform the insurer. Id. Because the insurer’s reservation of rights notification was untimely,

unclear, and did not fully and unambiguously inform the insured of the insurance company’s

position as to coverage, the insurer was therefore estopped from denying coverage for the claim

to the extent of its policy limits. Id. To avoid estoppel of a defense to coverage, an insurer may

either file a declaratory judgment action to determine its obligations under the policy or defend

the insured with a reservation of rights. See Kinnaman-Carson, 283 S.W.3d at 765.

 In contrast, the limit of the insured’s liability under an insurance policy is generally not

considered a defense to coverage. See Martin, 996 S.W.2d at 511; W. Heritage Ins. Co., 795

F.3d at 837. Missouri law recognizes a critical distinction between the assessment of what

conduct is covered under the policy and the assessment of the financial limit of the insurer’s

liability for conduct that is covered under the Policy. In other words, a question of what is

covered is distinct from a question of how much is covered. Revisiting the Supreme Court of

Missouri’s discussion of limits of liability in Martin, the Eighth Circuit noted that Martin

“distinguished between a policy limit, which an insurer cannot be precluded from asserting, and

a defense to coverage, which an insurer can be estopped from raising.” W. Heritage Ins. Co.,

795 F.3d at 837 (citing Martin, 996 S.W.2d at 511). “Martin accords with the general rule that

while the defense of the action by an insurer without reservation of rights as to its defenses may

constitute a waiver of the insurer’s defenses, it does not rewrite the policy so as to remove the

maximum on the coverage provided.” Id. (internal quotation omitted); see also Allstate Ins. Co.

v. Tozer, 392 F.3d 950, 956 (7th Cir. 2004) (finding an insurer’s failure to assert its limits of

liability in a reservation of rights letter did not estop the insurer from raising the defense in later

coverage litigation).

 21
 The Bar Plan correctly maintains that Martin is controlling in this case. Martin found

insurance coverage existed under a city’s general commercial liability policy based on an

ambiguity with respect to who is an “executive officer” and thus an insured under the policy.

Martin, 996 S.W.3d at 510. Once coverage was established, the parties disputed the applicable

limits of liability under the policy. Id. Martin held that the insurer was not estopped from

applying the per-person limit of liability—as opposed to the maximum aggregate limit—even

though the insurer failed to mention the liability limit in its denial of coverage letter. Id. at 511.

The Court in Martin held that “[w]hile estoppel may operate to bar a defense to a claim of

coverage, it does not create coverage where none existed under the policy in the first place.” Id.

(internal citation omitted).

 The Eighth Circuit later relied on Martin’s holding, stating that “[u]nder Missouri law, an

insurer’s failure to mention a policy limit—i.e., the maximum amount of coverage—in a letter

denying coverage does not preclude the insurer from later asserting that policy limit.” W.

Heritage Ins. Co., 795 F.3d at 837 (citing Martin, 996 S.W.2d at 511) (extending Missouri’s rule

for non-waiver of policy limits to deductible endorsements, such that waiver of a defense to

coverage does not similarly waive application of the deductible endorsements).

 It is well settled that an insurer’s communication to the insured of the limits of liability is

not a statement denying coverage. Thus, an insurer’s failure to communicate the limits of

liability neither constitutes a breach of the policy nor waives the applicable limits of liability.

See Martin, 996 S.W.2d at 511; Advantage, 449 S.W.3d at 22–23 (citing Kinnaman–Carson, 283

S.W.3d at 765); W. Heritage Ins. Co., 795 F.3d at 837.

 Here, the summary-judgment record shows The Bar Plan defended Witt without a

reservation of rights or a denial of coverage as to the single-versus-multiple-claim issue. It is

 22
undisputed that The Bar Plan did not communicate a reservation of rights specifically addressing

its position that the Stacys’ allegations in the malpractice action comprised only a single claim

under the applicable Limits of Liability set forth in the Policy. But the fact that The Bar Plan did

not reserve its rights as to the Limits of Liability is not a ground on which to grant summary

judgment in favor of the Stacys. Under Missouri law, The Bar Plan had no duty to reserve its

rights as to the applicable Limits of Liability, because limits of liability are not defenses to

coverage and cannot be waived. See Martin, 996 S.W.2d at 511; Advantage, 449 S.W.3d at 22–

23 (citing Kinnaman–Carson, 283 S.W.3d at 765); W. Heritage Ins. Co., 795 F.3d at 837. Thus,

The Bar Plan committed no breach of the Policy when its reservation of rights did not reference

any issue as to the Limits of Liability. See Advantage, 449 S.W.3d at 22–23 (citing Kinnaman–

Carson, 283 S.W.3d at 765). Indeed, the summary-judgment record shows that The Bar Plan did

not deny Witt coverage to the Stacys’ claim prior to Witt’s entering into the Section 537

Agreement. We similarly hold that The Bar Plan did not breach the Policy when it first informed

Witt of its single-claim position under the Limits of Liability during mediation. The Bar Plan’s

communication to Witt that it deemed Stacys’ malpractice allegations to be a single claim under

the Limits of Liability did not equate to a denial of coverage. Critical to our analysis, estoppel

only bars claims of non-coverage and does not bar the insurer from arguing that liability has been

exhausted under the applicable limits of liability. See Martin, 996 S.W.2d at 511. Given that

policy limits cannot be waived, the Stacys simply cannot use estoppel to preclude The Bar Plan

from asserting the Limits of Liability and thereby expand the amount of coverage afforded by the

Policy. See id.; W. Heritage Ins. Co., 795 F.3d at 837.

 We are sympathetic to the Stacys’ situation and recognize that The Bar Plan’s

communication of its single-claim position shortly before trial had the practical effect of

 23
diminishing Witt’s expected indemnity from The Bar Plan, potentially contributing to Witt’s

desire to enter into the Section 537 Agreement.6 Nevertheless, the Stacys’ estoppel argument

fails as a matter of Missouri law. We decline to create an exception to the general rule that an

insurer’s assertion of a limit of liability under an insurance policy is not a denial of coverage.

See Martin, 996 S.W.2d at 511; W. Heritage Ins. Co., 795 F.3d at 837. Therefore, we hold that

the trial court erred as a matter of law in finding that The Bar Plan’s position as to the applicable

Limits of Liability amounted to a breach of contract that created coverage beyond what existed

under the plain language of the Policy. See Martin, 996 S.W.2d at 511 (noting ambiguity in a

limit of liability cannot “create coverage where none existed”); W. Heritage Ins. Co., 795 F.3d at

837. A dispute over the Limits of Liability does not waive the policy limits but only impacts the

amount owed on the underlying judgment for the covered claim. See Martin, 996 S.W.2d at 511.

 Because The Bar Plan did not breach the Policy or waive its Limits of Liability when it

communicated its single-claim position as to the applicable Limits of Liability, summary

judgment was not properly granted to the Stacys on their equitable-garnishment action. Green,

606 S.W.3d at 115 (citing Goerlitz, 333 S.W.3d at 452).

 The summary-judgment record establishes that Witt, after learning of The Bar Plan’s

position that the Stacys’ malpractice suit would be treated as a single claim under the Limits of

Liability, terminated The Bar Plan’s defense and entered into a Section 537 Agreement without

6
 We understand the Stacys’ position that The Bar Plan knew before the mediation that the Stacys likely were
thinking they had two claims subject to two limits, and could have clarified its position as it did when presented with
the same one-versus-two-claims discrepancy in Chesterfield. See 407 S.W.3d at 625. Although the Stacys during
oral argument alluded to a possible claim of bad faith based upon these facts, the Stacys limited the scope of their
appeal to arguments based on estoppel and breach of contract. See Kissinger v. Am. Family Mut. Ins. Co., 563
S.W.3d 765, 780 n.10 (Mo. App. W.D. 2018) (internal citation omitted) (noting that while we review preserved
summary-judgment claims de novo without deference to the trial court, we will not review or fashion new
arguments on appeal for either party).

 24
The Bar Plan’s consent. Because the summary-judgment evidence shows that The Bar Plan did

not unjustifiably refuse to provide Witt coverage under the Policy, Witt had no authority to enter

into the Section 537 Agreement with the Stacys without The Bar Plan’s consent. See Schmitz v.

Great Am. Assurance Co., 337 S.W.3d 700, 710 (Mo. banc 2011). By entering into the Section

537 Agreement, Witt breached his duty as an insured to cooperate with The Bar Plan’s defense,

as specifically denoted in the Policy’s Cooperation Clause. See id. Further, if the insurance

company was not given the opportunity to control and manage the litigation, it is not bound by

any judgment entered pursuant to a Section 537 Agreement. See Spencer v. Hartford Cas. Co.,

556 S.W.3d 679, 682–83 (Mo. App. E.D. 2018). Consequently, under the express language of

the Policy and general insurance law, The Bar Plan cannot be held liable on the underlying

judgment in this case. See id.7 In accordance with Rule 84.14, given that our holding establishes

The Bar Plan is entitled to judgment as a matter of law and none of the material facts are in

dispute, it is proper to enter judgment in The Bar Plan’s favor without remanding the case to the

trial court. See Patty, 572 S.W.3d at 594 (internal citation omitted).

 Accordingly, Point Two is granted. The trial court’s grant of summary judgment to the

Stacys is reversed, and summary judgment is granted in favor of The Bar Plan.

II. Points Three and Four––Disposition Given Points One and Two

 Preliminarily, the Stacys assert that The Bar Plan failed to preserve Points Three and

Four for appellate review. Although this Court exercises de novo review in appeals from

summary judgment, parties may not raise arguments opposing the grant of summary judgment

for the first time on appeal. See Kissinger, 563 S.W.3d at 780 n.10 (internal citation omitted);

see also Country Mut. Ins. Co. v. Matney, 25 S.W.3d 651, 654 (Mo. App. W.D. 2000) (per

7
 The outcome of this appeal underscores the importance that all parties to a Section 537 Agreement understand the
provisions and limitations of the applicable policy of insurance.

 25
curiam) (internal citation omitted); Schwartz v. Custom Printing Co., 926 S.W.2d 490, 493 (Mo.

App. E.D. 1996) (internal citation omitted). In this case, however, we need not examine the

points for preservation given our dispositive holdings in Points One and Two.

 Point Three posits the trial court erred in finding The Bar Plan is bound by the underlying

judgment because the alleged breach of communicating its single-claim position had no effect on

Witt’s defense. Specifically, The Bar Plan asserts that the Stacys were willing to settle within

the single-claim limit, and the single-claim limit did not factor into Witt’s decision to settle with

the Stacys. In Point Four, The Bar Plan argues the trial court erred in rendering judgment in the

amount of $450,000. In particular, The Bar Plan maintains that the summary-judgment record

lacks sufficient evidence of defense expenses to calculate the final amount owed under the

Policy, given that the Policy is a “wasting” policy, such that exhaustion of the single-claim limit

by the costs of defending the malpractice claim would leave Witt responsible for the remainder.

An analysis of Points Three and Four is unnecessary because Points One and Two are dispositive

in finding that The Bar Plan did not breach the Policy as a matter of law with respect to

communicating its single-claim position on the Limits of Liability and does not owe on the

underlying judgment. Points Three and Four are denied.

 Conclusion

 The judgment of the trial court is reversed and vacated, and judgment is entered in favor

of The Bar Plan pursuant to our authority in Rule 84.14.

 _______________________________
 KURT S. ODENWALD, Presiding Judge

Philip M. Hess, J., concurs.
Lisa P. Page, J., concurs.

 26